# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| Tory Hart, trustee for the heirs and next-of-kin of E.K.A.H., <br>            Plaintiff, <br><br> v. <br><br> County of Dakota, Beth Dehner, and Jennifer Streefland, <br><br>            Defendants. | Court File No.:  22-cv-02035 <br> (MJD/JFD) <br><br> **MEMORANDUM OPPOSING DEFENDANTS' MOTIONS FOR SETTLEMENT ENFORCEMENT& JUDGMENT ON THE PLEADINGS** |

## INTRODUCTION

EKAH's mangled body was found in his mother's trunk shortly after his Dakota County social workers, Defendants Beth Dehner and Jennifer Streefland, assured the child protection court they had no sign EKAH's mother was unsafe. ████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

████████████████████████ Plaintiff never signed or even discussed a dismissal with prejudice.  He did not and will not sign the draft stipulation because the facts in Defendants' document production are worse than ever imagined.  Defendants' motions should be denied.

**FACTS**

1. **EKAH.**

EKAH was the child of Julissa Thaler and Tory Hart. EKAH was a kind and fun-loving 6 year-old boy who loved to fish and spend his boundless energy outdoors. ███████

████████████████████████████████████████████████ EKAH's life ended when his mother Thaler brutally murdered him with a shotgun. *State v. Thaler*, Hennepin Cty. Distr. Ct. File No. 27-CR-22-9775. ███████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

█████████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████

████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

███████████████

**3.**     **Thaler cycles through 3 Dakota County social workers.**

In February 2021, ████████ took over for ████████ as the social worker.

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████

In March 2021, ████████ took over for ████. ████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████

████████████████████████████████████████████

In June 2021, Dakota County Social Services supervisor Jennifer Streefland transferred the file to a fourth social worker, Beth Dehner.  (████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████





███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████

6.    **Foster mom shocked.**

In November 2021, after his first unsupervised visits with Thaler, ████████████
████████████████████████████████████████████████████ EKAH's
foster mom ███████████ told Dehner: ██████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

was shocked EKAH was still going to be placed in Thaler's home anyway:







**8.** **Tory implores Defendants to protect EKAH.**

When confronted by EKAH's foster mom, Dehner shifted blame to Streefland:





[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

**12.    No chance to say goodbye.**

Thaler cancelled EKAH's last visit with Tory and Tory's partner, Josie Josephson.

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

**13.    Plaintiff commences suit and does not sign "draft" stipulation.**

In August 2022, Tory was appointed trustee for EKAH's next-of-kin and commenced this wrongful death action in Dakota County District Court against Dakota County, Streefland, Dehner, and EKAH's guardian ad litem.    (ECF #6, Compl. ¶ 3.)

Dakota County removed the case from Dakota County District Court. Over the next months, counsel discussed the § 1983 claim. (Topka Decl. ¶ 5.) Defendants understood Plaintiff's § 1983 claim was for a substantive due process violation, as shown by Attorney Topka's emails that reference seminal caselaw on point. (ECF #37-1.)

In January 2023, the parties discussed whether Plaintiff would voluntarily dismiss his claims against Defendants. The parties did not reach an oral settlement agreement. (Tuchscherer Decl. ¶ 1.) Attorney Tuchscherer recalls driving through inclement weather to depositions in North Dakota. (*Id.* at ¶ 2.) Attorney Topka recalls a concern for Attorney Tuchscherer's safety during the call. (ECF #37, Topka Decl. ¶ 19.) Attorney Tuchscherer considered Attorney Topka's arguments and asked him to send a *draft* stipulation of dismissal for the § 1983 claim so that he could discuss the issue with his client. (Tuchscherer Decl. ¶ 2.) Attorney Topka then acted consistently with Attorney Tuchscherer's understanding by sending what Attorney Topka called a "draft stipulation." (ECF #37-7.) A dismissal *with prejudice* was never discussed or agreed to. (Tuchscherer Decl. ¶ 2.) Attorney Tuchscherer was not yet aware of the shocking evidence of Defendants' cover-up and deliberate indifference, as these documents were not located in Defendants' large document production until after the phone call. (*Id.* at ¶ 3.) Had Attorney Topka brought it up, Attorney Tuchscherer would not have agreed to a dismissal with prejudice in the early stages of the case, when Defendants had recently provided a large amount of documents. (*Id.*)

In February 2023, Attorney Topka sent Plaintiff's counsel a lengthy letter arguing that Plaintiff's prematurity objections to dozens of Defendants' contention interrogatories

showed that Plaintiff's lawsuit is frivolous and violates Rule 11. (ECF #37-12, at 4–5.) Attorney Topka asked Plaintiff's counsel to "advise on the status" of the stipulation of dismissal—He did not assert an oral settlement agreement was formed. (*Id.* at 13.) In response, Attorney Giesen shared the legal and factual basis for Plaintiff's claims, including some of the facts above. (Giesen Decl. Ex. B.) Attorney Giesen told Attorney Topka that Plaintiff did not agree to dismiss the § 1983 claim because the draft stipulation of dismissal was not signed. (*Id.*) In response to Plaintiff's request that Defendants stipulate to a punitive damages claim, the "settlement agreement" theory cropped up for the first time. (Tuchscherer Decl. ¶ 4.) A settlement agreement had never been brought up before; in fact, Attorney Tuchscherer tried to approach Attorney Topka as to whether his clients were interested in settlement negotiations. (Tuchscherer Decl. ¶ 5.) Attorney Tuchscherer was told Dakota County had little interest in settling until it loses a dispositive motion. (*Id.*)

### 14. Defendants' motions.

Defendants moved to dismiss Plaintiff's § 1983 claim with prejudice pursuant to an oral settlement agreement whereby the § 1983 claim would be voluntarily dismissed in exchange for unclear consideration. (*See* ECF #32, #38.) Defendants also seek partial judgment on the pleadings on the § 1983 and a negligence claim: Defendants argue Plaintiff "merely alleges a violation of state law," that the Eighth Circuit's *Forrester v. Bass* decision defeats the application of the state-created danger doctrine to these facts, and that no civil liability can be imposed for violations of Minnesota's Reporting of Maltreatment of Minors Act. (ECF #34, at 20.)

## ISSUES

1.   **Can the Court summarily enforce Attorney Topka's "draft" unsigned stipulation for dismissal with prejudice?**

2.   **Are Defendants entitled to judgment as a matter of law on Plaintiff's § 1983 and negligence claims?**

## ANALYSIS

### 1.   Defendants' settlement enforcement should be denied.

Defendants' settlement enforcement motion should be denied for three reasons:  (a) Fed. R. Civ. P. 41 conditions voluntary dismissals on "signed" stipulations; (b) under Minnesota contract law, the parties did not have a meeting of the minds, failed to agree on or even discuss the material issue of prejudice, and deferred contract formation until execution of a stipulation of dismissal; and (c) at minimum, material fact disputes about contract formation exist that the jury can resolve.

#### a.   Rule 41 requires "signed" stipulations.

First, Rule 41 defeats Defendants' motion.  It states:  "[T]he plaintiff may dismiss an action without a court order by filing . . .  a stipulation of dismissal signed by all parties who have appeared."  Fed. R. Civ. P. 4(a)(1)(A)(ii).  An informal stipulation over the telephone between counsel—assuming that actually happened—does not suffice. *Camacho v. Mancuso*, 53 F.3d 48, 52 (4th Cir. 1995) ("Even though both sides expressly agreed by telephone to dismiss this case, no such agreement was presented or consummated before the district court. As a result, the district court properly refused to treat the Camachos' notice of dismissal as an effective dismissal under Rule 41(a)(1)(ii)."—"Today we simply hold that the requirements of Rule 41(a)(1)(ii) are not met when only one party

signs and files a notice of dismissal."). *Cf. Alholm v. Am. S.S. Co.*, 167 F.R.D. 75, 79 (D. Minn. 1996) ("Here, however, the pertinent Stipulation fails to conform to the requisites of the [Rule 41(a)(1)(ii)], because the Medical Defendants have not been joined in its execution.").

### b. No oral contract for voluntary dismissal was formed under Minnesota contract law.

Second, Minnesota contract law leads to the same result. No contract was formed because Plaintiff's counsel asked for a draft stipulation to review, without an agreement on the material issue of prejudice, and because the parties deferred being bound until a stipulation of dismissal would be signed. Plaintiff agrees that Minnesota contract law governs the issue of whether a settlement agreement was formed. (ECF #34, at 4.) Under Minnesota law, "[t]o constitute a full and enforceable settlement, there must be such a definite offer and acceptance that it can be said that there has been a meeting of the minds on the essential terms of the agreement." *Jallen v. Agre*, 119 N.W.2d 739, 743 (Minn. 1963). Manifestation of mutual assent is essential to formation of all contracts. *Med Staff of Avera Marshall Reg'l Med. Ctr. v. Avera Marshall*, 857 N.W.2d 695, 701 (Minn. 2014). "[A]s long as it is clear that the other party has never assented to the agreement becoming effective as one, it is no contract." *Sawyer v. Mut. Life Ins. Co. of New York*, 207 N.W. 307, 308 (Minn. 1926).

Offers must be "clear, definite, and explicit, and leave[] nothing open for negotiation." *Lefkowitz v. Great Minneapolis Surplus Store, Inc.*, 86 N.W.2d 689, 691 (Minn. 1957). "In passing upon questions of offer and acceptance, as determinative of

whether a contract has thereby been created, courts normally require a greater exactitude than when they are asked to salvage an existing contract." *Minar v. Skoog*, 50 N.W.2d 300, 302 (Minn. 1951). An invitation to enter a bargain, as shown by language that is "preliminary in its character" or "precatory," is not an offer. *W. H. Barber Co. v. McNamara-Vivant Contracting Co.*, 293 N.W.2d 351, 355 (Minn. 1979). "[C]are should be taken not to attach promissory and contractual effect to what was at the time merely an expression of intention concerning future action." *In re Sickmann's Estate*, 289 N.W. 832, 833–34 (Minn. 1940). "Negotiations for a contract do not constitute a contract in themselves." *451 Corp. v. Pension Sys. for Policemen & Firemen of City of Detroit*, 310 N.W.2d 922, 924 (Minn. 1981).

Attorney Tuchscherer did not form an oral contract for a Rule 41 dismissal. While driving in inclement weather to depositions in North Dakota, he told Attorney Topka to send a draft stipulation. This was not an "offer" but preliminary discussion. Attorney Topka confirmed Attorney Tuchscherer's understanding by sending a "draft" stipulation for review. The "draft" was not signed. The parties did not agree—or even discuss—a dismissal with prejudice. Defendants are not entitled to have the court enforce a contract for a Rule 41 voluntary dismissal with prejudice, which the parties did not even discuss. *Holliday v. Hubbard*, 47 N.W. 1134, 1134 (Minn. 1891) (courts cannot "import[] into the contract material terms which the parties omitted to insert" because that "would be making a contract for the parties, instead of enforcing one made by them"). *Cf.* Fed. R. Civ. P. 41(a)(1)(B) (default rule is a without-prejudice dismissal if the signed stipulation of dismissal is silent on the issue).

Even if there were a sufficiently definite offer and mutual assent on all material terms, any agreement was conditional on a signed stipulation. "[I]f an intention is manifested in any way that legal obligations between the parties shall be deferred until the writing is made, the preliminary negotiations and agreements do not constitute a contract." *Restatement (First) of Contracts* § 26 cmt. a (Am. Law Inst. 1932); *see also Greer v. Kooiker*, 253 N.W.2d 133, 140 (Minn. 1977) (adopting § 26). *Massee v. Gibbs* remains the landmark Minnesota case on the issue of whether signed document is required for contract formation. There, the parties exchanged letters discussing a contract to sell land. 210 N.W. 872, 872 (Minn. 1926). All terms of the contract "were pretty well agreed upon." *Id.* The defendant asked the plaintiff to make an initial draft. *Id.* The plaintiff prepared a draft and sent it to defendant. *Id.* The defendant reviewed the draft, made changes, and returned an unsigned copy to the plaintiff, telling the plaintiff, "Have another copy made, and if satisfactory to you forward the two copies with your signature. I see no reasons why we can't close it right up." *Id.* Plaintiff signed defendant's copy, returned it to defendant, asked him to sign. *Id.* The defendant received the contract but did not sign it. *Id.*

The *Massee* court identified six factors to decide whether a party objectively intended to defer being bound until a signed writing: (1) whether the contract is of a kind usually found in writing; (2) whether the contract needs a formal writing for its full expression; (3) whether the contract has few or many details; (4) whether the amount involved is large or small, (5) whether it is a common or unusual contract, and (6) whether the negotiations themselves indicate that a written draft is contemplated as the final conclusion of the negotiations. *Massee*, 210 N.W. at 873–74; *see also Restatement*

*(Second) of Contracts* § 27 cmt. c (Am. Law Inst. 1981) (providing a similar list of factors that show whether a signed writing is intended either as a written memorial of an already completed deal or as a consummation of the negotiations). The court held that the defendant was not bound without a signed writing because he "never expressed his assent to become bound" without one. *Id.* at 873.

All six *Massee* factors confirm that a signed stipulation would be the deal, if any. (1) Stipulations of dismissal are usually found in signed writings. Rule 41 requires or at least strongly indicates a signed document is required. (2) The stipulation of dismissal requires a formal writing for full expression. Again, Rule 41 required the parties to sign the document and specify whether any dismissal was with or without prejudice. (3) While a stipulation of dismissal has relatively few details, at least two critical details must be in writing: plaintiff's signature, and a designation of prejudice. (4) The amount involved is large. This is a wrongful death case. EKAH suffered greatly while in Dakota County's custody. EKAH's surviving family members suffer as well, having lost a lifetime of a loving relationship with EKAH. Defendants also seek punitive damages. No other child in Dakota County custody should be treated like EKAH was. (5) An oral stipulation of dismissal with prejudice by telephone is highly unusual. Plaintiff's counsel never heard of this before Attorney Topka's motion. (6) Attorney Tuchscherer's request for a draft stipulation was an invitation for Plaintiff to consider a Rule 41 dismissal, not a confirmation that an unsigned Rule 41 voluntary dismissal was already consummated. *Cf. Massee*, 210 N.W. at 874. ("If a written draft is proposed, suggested or referred to, during the negotiations, it is some evidence that the parties intended it to be the final closing

of the contract"); *Hammond v. Grengs*, No. A20-0894, 2021 WL 856081, at *3 (Minn. App. Mar. 8, 2021) (statements that party would "have [his] lawyers review" a proposal and "would 'get back to' " the counterparty meant that the parties' email exchange did not form a valid agreement), *review denied* (Minn. May 26, 2021). On balance, the record above speaks for itself about Plaintiff did not and will not sign the draft stipulation of dismissal with prejudice. Plaintiff is horrified by what was found in Defendants' document production after the January phone conversations. Because Attorney Tuchscherer never expressed assent to be bound to a Rule 41 dismissal with prejudice, and never signed any stipulation to that effect, there is no settlement. There was no meeting of the minds.

### c. Defendants can try contract formation to the jury.

At minimum the Court cannot summarily credit Attorney Topka's recollection of the phone call as a settlement agreement over Attorney Tuchscherer's recollection of the phone call as a candid discussion between counsel about the possibility of narrowing issues while discovery was in its early stages. The issue of whose testimony is more credible regarding contract formation is for the jury—just like it would be in any other breach of contract case. *Cf. Gatz v. Sw. Bank of Omaha*, 836 F.2d 1089, 1095 (8th Cir. 1988) ("The district court must hold an evidentiary hearing, however, when there is a substantial factual dispute concerning the existence or terms of the settlement agreement."); 15A C.J.S. *Compromise & Settlement* § 85 ("Questions of fact in actions involving a compromise and settlement are for the jury while questions of law are for the determination of the court.").

### 2. Judgment on the pleadings is inappropriate.

Defendants' motion for judgment on the pleadings also fails. Judgment on the pleadings is appropriate if, "accepting all facts pled by the nonmoving party as true and drawing all reasonable inferences from the facts in favor of the nonmoving party, the movant has clearly established that no material issue of fact remains and that the movant is entitled to judgment as a matter of law." *Schnuck Mkts., Inc. v. First Data Merch. Servs. Corp.*, 852 F.3d 732, 737 (8th Cir. 2017). Because Rule 12(c) motions extinguish litigation at the threshold, courts treat these motions with the greatest of care. *N. Spirits Stillwater LLC v. Water to Wine LLC*, No. 22CV00514SRNDJF, 2023 WL 2401518, at *3 (D. Minn. Mar. 8, 2023). Judgment on the pleadings is inappropriate here because: (a) both parties refer to materials outside the pleadings, and summary judgment is more properly deferred until discovery is complete; (b) Defendants' legal arguments are unpersuasive; and (c) Plaintiff should be allowed leave to replead to correct any deficiencies the Court may find based on Defendants' production.

### a. Summary judgment can be deferred.

First, the Court has discretion to convert Defendants' motion for judgment on the pleadings into a summary judgment motion and defer ruling until discovery is finished. "[A] motion under Rule 12(c) must be heard and decided before trial unless the court orders a deferral until trial." Fed. R. Civ. P. 12(i). "If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R.

Civ. P. 12(d). "[I]f the case involves novel factual or legal questions, as often becomes apparent when outside material is presented and the motion becomes one for summary judgment, it may be advisable to delay consideration of the motion until trial if the court is left in doubt as to one or more factual matters. This will give the parties additional time to utilize the pretrial discovery procedures and more completely investigate the issues presented, thus facilitating and insuring a consideration and adjudication of the case on its merits." 5C Arthur R. Miller et al., *Federal Practice & Procedure* § 1367 (3d ed. 2022).

Defendants' combined settlement enforcement motion/motion for judgment on the pleadings creates an awkward procedural situation. The fist motion is effectively one for summary judgment. It is not tied to the pleadings and seeks judgment on the merits. This forces Plaintiff to marshal the disturbing evidence in Defendants' document production about why the draft stipulation was not signed. *Cf. Voicestream Minneapolis, Inc. v. RPC Props. Inc.*, 743 N.W.2d 267, 273 (Minn. 2008) (holding that summary judgment procedure applies to settlement enforcement motions). After arguing for summary judgment, Defendants backtrack to challenge the way claims are pleaded, which was authored before Plaintiff had Defendants' discovery in hand. Defendants also rely on extrinsic materials, including that Thaler made significant progress before Defendants returned custody, that there was "absolutely no evidence" that Thaler was physically abusive, that Plaintiff was merely an absentee parent, and that "[t]he County simply returned Decedent to Thaler's custody as it found him as required by state law and the CHIPS framework." (ECF #34, at 1–2, 29.)

Because both parties present extrinsic materials as part of this combined motion, Rule 12(d) conversion is proper. Pursuant to Rule 12(i), the Court should defer summary judgment motion until discovery is over. Deferral does not prejudice Defendants. If anything, Plaintiff is entitled to partial summary judgment on the issue of liability. It remains to be seen how Defendants could genuinely dispute their own startling, contemporaneous admissions. *Cf.* Fed. R. Civ. P. 56(f) (summary judgment for nonmovant proper after giving notice and time to respond).

### b. Defendants' § 1983 arguments fail.

Defendants' arguments for dismissing Plaintiff's § 1983 claim are unavailing. Defendants' primary theory is that Plaintiff has not pleaded deprivation of a federal right or any other theory "that might hold the County liable." (ECF #34, at 19–20.) Defendants know this case involves substantive due process rights. That is why counsel previously discussed *DeShaney v. Winnebago County*. Presumably that is why Defendants brief substantive due process caselaw. Reading the complaint as a whole and in a light favorable to Plaintiff, a substantive due process violation is alleged. If not, it is litigated by consent.

Defendants' *DeShaney* analysis is flawed. "[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." 489 U.S. 189, 199–200 (1989). Pursuant to *DeShaney*, "the state has a constitutional obligation to provide adequate medical care, protection and supervision . . . .The duty to

provide medical care applies to psychological care as much as physical." *Roberson v. Dakota Boys & Girls Ranch*, 42 F.4th 924, 930 (8th Cir. 2022).

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████

To be sure, Defendants' rely heavily on the fact that EKAH was even more egregiously harmed by Thaler *after* custody was returned. While that is true, *DeShaney also* contemplates post-custody liability: "[T]he State does not become the permanent guarantor of an individual's safety by having once offered him shelter" *if t*he state "played no part in [the] creation [of subsequent dangers to that individual and] did . . . [nothing] to render him any more vulnerable" to those dangers than the individual already was. 489 U.S. 189, 201 (1989). The Eighth Circuit identifies five elements of a "state-created danger" claim: (1) the plaintiff is a member of a limited, definable group; (2) the state's conduct put the victim at significant risk of serious, immediate and proximate harm; (3) the

risk was obvious or known to the state; (4) the state acted recklessly in conscious disregard of the risk; (5) in total, the state's conduct shocks the conscience. *Montgomery v. City of Ames*, 749 F.3d 689, 695 (8th Cir. 2014).

Each element can be inferred from Plaintiff's complaint read as a whole and even more directly from Defendants' stunning document production.  (1) EKAH was a member of a limited and definable group.  He was a 6-year old boy in Defendants' custody until shortly before he was murdered. (2) Defendants knew EKAH would be harmed.  EKAH was being harmed while in Dakota County's custody.  Defendants played an active role in the harm to EKAH by returning EKAH to his abuser. ████████████████████████████

████████████████████████████████████████████████████████

████ Defendants ignored Plaintiff's pleas that Thaler was ████████ enough to harm EKAH to keep EKAH from seeing him.   (3) Defendants' coworkers said ████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████ (4) Defendants told the court in the CHIPS case that they had no sign EKAH would be unsafe because it was convenient, not because it was true.  Putting aside ████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████ (5) The facts of this case are horrifying.  The Dakota County social workers who are trusted to keep EKAH safe ████████████████████████████████████ To ████████

29

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████ does not shock the conscience, it is unclear what could.

Defendants' *Forrester v. Bass* analysis lacks candor.  There, the Eighth Circuit found a lack of conscience-shocking conduct because "[t]he record does not portray [the social worker] as an apathetic or dilatory social worker who saw and ignored wanton child abuse." 397 F.3d 1047, 1058–59 (8th Cir. 2005).  This case is different ███████████████████ ██████████████████████████████

Defendants also mispresent *S.S. v. McMullen*.  There, a child was returned home from foster care to a father who associated with a pedophile, "who subsequently sodomized [the child]."  225 F.3d 960, 962 (8th Cir. 2000) (en banc).  While the court held this was insufficient for a state-created danger claim, it distinguished the circumstances of this case, i.e., where the state places a child directly with someone "who was known to be a child abuser."  *Id.*  The Eighth Circuit cited a case that reason:  "If the fire department rescues you from a fire that would have killed you, this does not give the department a constitutional license to kill you, on the ground that you will be no worse off than if there were no fire department."  *K.H. ex rel. Murphy v. Morgan*, 914 F.2d 846, 849 (7th Cir. 1990).  Defendants placed EKAH with a known abuser, knowing ███████████ he would be harmed.  Defendants went further.  They provoked this ███████████ ██████████████████████████████████████████████████████

████████████████████████████████

Overall, there is no doubt an appropriately high bar for asserting civil rights claims such as those brought by EKAH's next-of-kin. Regrettably, this standard was transcended as a matter of law, particularly if Defendants cannot genuinely dispute what their own documents say. There is at least enough of a fact dispute let the jury decide. *Cf. Mays v. Kne*, No. 21-CV-2075 (WMW/DTS), 2022 WL 16707371, at *3 (D. Minn. Nov. 4, 2022) (denying motion to dismiss state-created danger claim).

### c. Defendants' negligence arguments fails.

Defendants' negligence arguments also fail. While Defendants claim that Plaintiff is creating new statutory causes of action by citing the Reporting of Maltreatment of Minors Act ("RMMA"), it is troubling that Defendants do not address the most recent Minnesota Supreme Court case on point, which Plaintiff's pleading closely tracks. In *Jepsen ex rel. Dean v. County of Pope*, the Minnesota Supreme Court held that there were genuine issues of material fact as to whether social workers' failure to notify local law enforcement of reports of suspected child abuse was a proximate cause of the child's death, which precluded summary judgment on claim that social workers were negligent in performing RMMA duties. 966 N.W.2d 472, 491–92 (Minn. 2021).

This court's supplemental jurisdiction over Plaintiff's state law claim does not allow for second-guessing of recent decisions on state law by the state's highest court. *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938). As in *Jepsen*, Plaintiff's claim here is a common-law claim for negligence. Among the other RMMA violations detailed in Plaintiff's Complaint, Defendants did not tell local law enforcement or another welfare agency about maltreatment of EKAH they knew would occur "before long." Under RMMA, silence in

the face of child abuse is not the standard. Allowing Plaintiff's negligence claim to proceed for Defendants' RMMA violations is consistent with *Becker v. Mayo Foundation*, which held there is no need to read a statutory cause of action into a statute where a common-law claim may be brought with reference to statutory duties. 737 N.W.2d 200, 218 (Minn. 2007) ("[RMMA's] reporting requirement is admissible as evidence that a physician of ordinary skill who suspects that a patient is the victim of child abuse will report the suspected abuse to outside authorities."); *see also Olson v. Ramsey County*, 509 N.W.2d 368, 372 (Minn. 1993) (county not immunized for negligent implementation of case plan). *Cf. Radke v. County of Freesborn*, 694 N.W.2d 788, 798 (Minn. 2005) (statutory claim exists for negligence in the investigation of child abuse and neglect reports as required under RMMA).

### d. Plaintiff can replead if necessary.

Finally, Plaintiff respectfully requests leave to replead in the event the Court finds any pleading deficiency. A denial of leave to replead will be reversed "when the plaintiff has shown it can cure the lack of specificity." *Frey v. City of Herculaneum*, 44 F.3d 667, 672 (8th Cir. 1995). Plaintiff is more than willing to amend to plead additional details discovered in Defendants' document production. Plaintiff is separately bringing a motion to add a punitive-damages claim as well. The 1-year anniversary of EKAH's murder should not coincide with a dismissal with prejudice for curable pleading deficiencies. Substantial justice for EKAH requires more. *Cf. Fast v. Sch. Dist. of City of Ladue*, 728 F.2d 1030, 1033 (8th Cir. 1984) (en banc) ("A party is entitled to whatever relief is appropriate under the proof, 'even if the party has not demanded such relief in his

pleadings.' " (quoting Fed. R. Civ. P. 54(c)); 10 Mary Kay Kane, *Federal Practice & Procedure* § 2664 (4th ed.) ("If defendant has appeared and begun defending the action, adherence to the particular legal theories of counsel that may have been suggested by the pleadings is subordinated to the court's duty to grant the relief to which the prevailing party is entitled, whether it has been demanded or not.").

## CONCLUSION

Defendants' motions should be denied.

Respectfully submitted,

Dated: April 10, 2023       **MESHBESHER & SPENCE, LTD.**

By *s/ Joshua M. Tuchscherer*
  Joshua M. Tuchscherer (#0314250)
  Andrew L. Davick (#332719)
  1616 Park Avenue
  Minneapolis, MN  55404
  Ph:  612-339-9121
  jtuchscherer@meshbesher.com
  adavick@meshbesher.com

**-AND-**

**DUNLAP & SEEGER, P.A.**

By  *s/ John T. Giesen*
John T. Giesen (#0399951)
30 Third Street SE, Suite 400
Rochester, MN  55904
Ph: 507-288-9111
jtg@dunlaplaw.com

**ATTORNEYS FOR PLAINTIFF**