UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| Tory Hart, trustee for the heirs and next-of-kin of E.K.A.H., <br><br> Plaintiff, <br><br> v. <br><br> County of Dakota, Beth Dehner, and Jennifer Streefland, <br><br> Defendants. | Court File No.: 22-cv-02035 (MJD/JFD) <br><br><br> **MEMORANDUM IN SUPPORT OF MOTION TO MODIFY THE SCHEDULING ORDER AND SEEKING LEAVE TO AMEND COMPLAINT** |

## INTRODUCTION

This case stems from the tragic murder of an innocent 6-year-old boy and the actions of government officials leading directly to it. Through review of Defendants' documents, Plaintiff uncovered Defendants' and their coworkers' private messages, which reveal in plain terms just how deliberate and appalling Defendants' actions were. Plaintiff requests that the Court modify the amendment deadline and allow Plaintiff to add a claim for punitive damages.

## FACTS

Plaintiff provides a synopsis of the horrifying private messages and other facts discovered in Defendants' document disclosure in his memorandum opposing Defendants' dispositive motions, which is incorporated by reference. (ECF #45, at 2–17.)

Plaintiff served the initial complaint in this case on July 20, 2022. (Apr. 17, 2023, Tuchscherer Decl. ¶ 1.) The case was initially filed in Dakota County District Court. (*Id.* at ¶ 2.) It was removed the case on August 18, 2022. (ECF #3.) The scheduling order

1

was filed on October 25, 2022. (ECF #30.) The pleading amendment deadline was February 1, 2023. (*Id.*)

In October 2022, Defendants produced around 25,000 pages of documents. (Apr. 17, 2023 Tuchscherer Decl. ¶ 3.) In November 2022, Defendants served initial written discovery requests; the parties informally deferred Plaintiff's responses to these discovery requests until after the criminal trial of his son's murderer concluded in mid-February 2023. (*See* Plaintiff's Mem. Opp. Defs.' Motion to Compel.) Over the same period, the parties' counsel engaged in discussions regarding the deficiencies Defendants perceived in Plaintiff's complaint. (*See* Apr. 17, 2023 Tuchscherer Decl. Ex. A.) Due to the demands of this case, Plaintiff and Plaintiff's counsel engaged co-counsel to ensure continued and concerted pursuits of conducting discovery and case management in a diligent manner. (*Id.* at ¶ 4; ECF #31.)

As Plaintiff concluded review of Defendants' large document production, Plaintiff uncovered facts that were not, and could not reasonably have been, known to Plaintiff at the outset. (Apr. 17, 2023 Tuchscherer Decl. ¶¶ 6–7; Ex. A.) Plaintiff identified private messages and emails between Defendants and their coworkers containing the newly uncovered facts and requested that Defendants stipulate to the addition of a punitive damages claim. (*Id.*) Plaintiff also discussed his concerns with Defendants' designation of nearly every single document produced as confidential, which Plaintiff was concerned exceeded what the protective order allowed. (*Id.*, Ex. B.)

In response to Plaintiff's discussion of the new facts, Defendants claimed for the first time that there was an "oral," off-the-record Rule 41 dismissal months earlier;

2

Defendants also moved for judgment on the pleadings on Plaintiff's negligence and civil rights claims. (ECF #33.) Defendants putatively could have raised the same arguments that are made in their motion for judgment on the pleadings before answering; however, Defendants waited until March 14, 2023, months after the pleadings were filed and a month and a half after the deadline to amend the pleadings. (*See* ECF #35, at 18–33.)

This case is still in early stages; written discovery is still in process, and the discovery deadline is not until June 5, 2023. (ECF #30.) To date, neither side has conducted a single deposition. (Apr. 17, 2023 Tuchscherer Decl. ¶ 8.) While Plaintiff noticed depositions to occur well in advance of the June discovery cutoff, defense counsel unilaterally cancelled Plaintiff's depositions in response to perceived deficiencies in Plaintiff's interrogatory answers. (*See* Plaintiff's Mem. Opp. Defs.' Motion to Compel.) Because the parties will now need to re-coordinate witnesses and counsel's calendars, there is likely no possible way the parties can complete discovery under the timetable originally envisioned. In addition, discussions with Julissa Thaler's public defender to coordinate her deposition have not been productive thus far; Plaintiff is concerned he will not be able to arrange her testimony before the discovery deadline, pending any possible appeal of her first-degree murder conviction. (Apr. 17, 2023 Tuchscherer Decl. ¶ 10.) Thaler's testimony is critical for Plaintiff's expert to review. (*Id.*)

Plaintiff now moves to modify the pleading amendment deadline and for leave to add a punitive damages claim. (*Id.*, Ex. C.) Plaintiff is filing this motion as soon as was practicable, having been required to respond to three separate motions from Defendants since the disturbing facts were discovered. (ECF #32, 55.)

**ARGUMENT**

Federal Rules of Civil Procedure 15 and 16 support granting Plaintiff's motion. "Rule 16 opens the door to Rule 15." *Shank v. Carleton Coll.*, 329 F.R.D. 610, 614 (D. Minn. 2019). Under Rule 16, a schedule may be modified "for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). Where the deadline to be modified already passed, courts in this district also determine if the movant meets the "extraordinary circumstances" standard under Local Rule 16.3(d). "Rule 16(b)(4) . . . resolves whether the scheduling order should be modified. If the court finds good cause under Rule 16, then the court proceeds to the Rule 15 inquiry, which resolves whether the complaint can be amended." *Shank*, 329 F.R.D. at 614.

### 1. Plaintiff's diligence, discovery of horrifying new facts, and changed circumstances are ample good cause to modify the schedule.

There is ample good cause to allow Plaintiff to amend a pleading, where horrifying private messages were discovered, the scheduling order has not been amended even once, and the opposing party recently brought the case back to the pleading stage by bringing a Rule 12(c) motion and cancelling depositions. Under Rule 16, the movant's diligence in attempting to meet the order's requirements is the primary measure of "good cause." *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 716 (8th Cir. 2008). A diligence analysis considers the timing of the motion to modify the schedule in relation to the deadline sought to be modified, the deadline for discovery, and other significant dates in the case. *See id.* at 717 (finding that a party was not diligent where seeking leave to plead an affirmative defense "two and a half years after the suit was filed; a month after the close of discovery;

a month after it raised the defense in its summary judgment motion; *almost eighteen months after the deadline for amending pleadings*; and eight full months after it was actually aware of the preemption defense's applicability" (emphasis added)). In addition to diligence, "good cause" under Rule 16 may be shown by the emergence of new facts or other changes in circumstances. *Ellingsworth v. Vermeer Mfg. Co.*, 949 F.3d 1097, 1100 (8th Cir. 2020). The fact that an amendment sought is factual rather than legal in nature suggests an amendment based on discovery revelations may be more appropriate. *Cf. Sherman*, 532 F.3d at 717 (affirming district court's finding that movant was not diligent where amendment sought was "purely legal").

The amendment Plaintiff seeks—the addition of a punitive damages claim—is highly factual in nature and relies on private messages dispersed among 25,000 pages of documents. As set out in detail in Plaintiff's opposition to Defendants' dispositive motions, Defendants told each other in private messages that, ███████████████████

███████████████████████████████████████

███████████████████████   ███████████████

Defendants' co-workers ███████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████

Plaintiff could not have amended earlier absent knowledge of these facts. "Punitive damages shall be allowed in civil actions only upon clear and convincing evidence that the acts of the defendant show deliberate disregard for the rights or safety of

5

others." Minn. Stat. § 549.20. For a § 1983 claim, the punitive damages standard requires a factual showing that the defendant's conduct was "motivated by evil motive or intent," or "involves reckless or callous indifference to the federally protected rights of others." *Washington v. Denney*, 900 F.3d 549, 564 (8th Cir. 2018). The facts should also "call[] for punishment and deterrence over and above that provided by the compensatory award." *Id.* at 565 (quotation omitted).

Plaintiff's reasonable (but sadly inaccurate) concern was that he would find the government officials trusted with protecting EKAH were clearly careless but perhaps not fully cognizant of what they were doing. To that end, Plaintiff's counsel even spoke with defense counsel about the possibility of a Rule 41 dismissal. Plaintiff was disabused of his ignorance when he read Defendants' and their co-workers' startling private messages. Plaintiff then immediately requested a stipulation to add a punitive damages claim. Plaintiff should not be punished for being cautious before alleging severe wrongdoing. Scheduling orders are not so sacrosanct—and the discovery process and judgments on the merits so trivial—that grave assertions must be fired from the hip, if at all. *Cf. Birchwood Lab'ys, Inc. v. Battenfeld Techs., Inc.*, 762 F. Supp. 2d 1152, 1155 (D. Minn. 2011) ("[I]t would be manifestly unfair to require a party to plead a claim upon first discovering it when that claim is subject to the heightened pleading requirements of Rule 9(b) and the party lacks the information necessary to properly plead such a claim."); *Enzo Life Sciences, Inc. v. Digene Corp.*, 270 F.Supp.2d 484, 487–88 (D. Del. 2003) (finding good cause because moving party was "prudent and possibly required" to confirm factual allegations of serious wrongdoing by taking depositions).

Plaintiff's diligence is also evidenced by actively seeking out co-counsel to assist with the many demands of this complex case, including the review of over 25,000 pages of documents. A party's efforts to maintain sufficient legal counsel is relevant to diligence. *Bradford v. DANA Corp.*, 249 F.3d 807, 809 (8th Cir. 2001) (affirming district court's decision not to grant change in schedule because movant's action did not amount to a diligent effort to secure counsel and therefore did not satisfy the "good cause" standard). In *Bradford*, the movant's failure to secure new counsel, and minimum efforts to do so, after their previous counsel withdrew, showed a lack of diligence. The facts here are in stark contrast to those in *Bradford*. The decision to retain co-counsel by Plaintiff shows a commitment to keeping this complicated case moving forward, a good-faith endeavor to meet all scheduled deadlines, and an effort to review the document containing the facts upon which this motion is based in a timely manner.

Finally, circumstances in the case have changed. Defendants brought a motion for judgment on the pleadings on issues that could have been raised pre-answer, taking this case back to the pleading stage. Defense counsel then cancelled Plaintiff's depositions, which means no witnesses will need to be re-deposed and that, regardless of this motion, the case will not progress as originally intended. While Defendants' flurry of motions slightly delayed Plaintiff's ability to file this motion, Plaintiff is having it heard at the earliest, mutually available chance. In sum, a punitive damages claim causes no unfair delay or prejudice. Good cause exists to grant Plaintiff's first and only modest extension request thus far in a complex civil case.

## 2. The facts uncovered and the broad importance this case presents for other children in EKAH's situation are "extraordinary circumstances."

The circumstances here are also extraordinary. If the deadline to be modified already passed, courts in this district also look for "extraordinary circumstances." D. Minn. LR 16.3(d). Plaintiff recognizes and appreciates that courts have an interest in retaining the credibility of deadlines in a case management order but also notes that both LR 16.3(d) and Fed. R. Civ. P. 16(b)(4) anticipate there are times where post-deadline scheduling modifications are appropriate and in the interest of justice. To consider the standard for showing "good cause" and "extraordinary circumstances" so high as to be impossible to meet would effectively read Rule 16(b)(4) out of the Federal Rules and Rule 16.3(d) out of the Local Rules.[1] While "extraordinary circumstances" may require a showing beyond or other than "good cause," the Ninth Circuit has stated that "as a practical matter, extraordinary circumstances is a close correlate of good cause." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 610 (9th Cir. 1992). Thus, the requirements for obtaining a modification of the schedule were not intended to be completely unattainable and the bar should be somewhere below a need to prevent "manifest injustice."[2]

---

[1] *Cf. Sherman*, 532 F.3d at 716 ("To permit district courts to consider motions to amend pleadings under Rule 15(a) without regard to Rule 16(b) would render scheduling orders meaningless and effectively . . . read Rule 16(b) and its good cause requirement out of the Federal Rules of Civil Procedure." (internal quotation marks omitted)).

[2] *Cf.* Fed. R. Civ. P. 16 advisory comm. notes—1983 amdt. ("After consultation with the attorneys for the parties and any unrepresented parties-a formal motion is not necessary-the court may modify the schedule on a showing of good cause if it cannot reasonably be met despite the diligence of the party seeking the extension. Since the scheduling order is entered early in the litigation, this standard seems more appropriate than a 'manifest injustice' or 'substantial hardship' test. Otherwise, a fear that extensions will not be

Disallowing Plaintiff's amendment would be a manifest injustice, not only to EKAH but to other children similarly situated. Several weeks after the scheduled deadline for amending pleadings, while several months of discovery remained and Thaler's criminal trial had recently resulted in a first-degree murder conviction, Plaintiff found private messages that expose ███████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████ An innocent little boy ███████████

████████████████████████████████████████████████████ Plaintiff did not and could not have anticipated exposing such egregious actions by those charged with protecting EKAH. The uncovering of a concerted effort by government actors to act with deliberate disregard for the rights, safety, and wellbeing of a 6-year-child under their care, ███████████████████████████████████ is an extraordinary circumstance. If it is not, it is unclear what is. The 1-year anniversary of the murder is 1 month away. This tragic anniversary should not coincide with an order depriving a grieving father the opportunity to seek deterrence needed to ensure no other child receives the callous indifference his son received by those in a position of trust.

### 3. Free leave to amend is appropriate.

Finally, Plaintiff should be given free leave to add a claim for punitive damages. A party may amend its pleading with leave of the court and "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). This is a "liberal standard" and

---

granted may encourage counsel to request the longest possible periods for completing pleading, joinder, and discovery.").

the motion to amend should be granted absent a showing by the opposing party of undue delay, bad faith, or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the non-moving party, or futility of the amendment. *Sherman*, 532 F.3d at 715.

Plaintiff has not brought this motion to cause undue delay, in bad faith, or with dilatory motive. Plaintiff acted as quickly as possible under the circumstances to file this motion, despite three intervening motions filed by Defendants. Plaintiff does not expect any additional delays in the schedule based on a grant of leave to amend (although other considerations likely require adjustments to the schedule, including defense counsel's cancellation of Plaintiff's depositions and the potential but temporary unavailability of Thaler pending an appeal of her conviction). There is no unfair prejudice to Defendants. Plaintiff put Defendants on notice almost immediately after uncovering the private messages at issue, which Defendants have yet to distinguish or even acknowledge. The amendment sought would not be futile. The facts uncovered are appalling and are enough to meet even the high standard of showing, by clear and convincing evidence, of deliberate disregard for the rights or safety of others, as required for punitive damages under Minnesota law, and an evil motive or intent or a reckless or callous indifference to a federally protected right, as required for a § 1983 claim. Deterrence is needed for those inclined, like Defendants, ███████████████████████████████████████████████████████████████████████████████████████. Defendants' and their coworkers' private messages speak for themselves.

## CONCLUSION

Plaintiff's motion should be granted.

Dated: April 17, 2023  **MESHBESHER & SPENCE, LTD.**

By *s/ Joshua M. Tuchscherer*
Joshua M. Tuchscherer (#0314250)
Andrew L. Davick (#332719)
1616 Park Avenue
Minneapolis, MN 55404
Ph: 612-339-9121
jmt@meshbesher.com
adavick@meshbesher.com

**-AND-**

**DUNLAP & SEEGER, P.A.**

By *s/ John T. Giesen*
John T. Giesen (#0399951)
30 Third Street SE, Suite 400
Rochester, MN 55904
Ph: 507-288-9111
jtg@dunlaplaw.com

**ATTORNEYS FOR PLAINTIFF**