UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| Tory Hart, trustee for the heirs and next-of-kin of E.K.A.H., <br> Plaintiff, <br><br> v. <br><br> County of Dakota, Beth Dehner, and Jennifer Streefland, <br><br> Defendants. | Court File No.: 22-cv-02035 <br> (MJD/JFD) <br><br> **THE COUNTY'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION TO AMEND HIS COMPLAINT** |

## INTRODUCTION

Fundamentally failing the purpose of any motion, Tory Hart, trustee for the heirs and next-of-kin of E.K.A.H., ("**Plaintiff**") does not precisely define the standard he must meet—or confuses it with an inapplicable standard—and does not identify the facts that he believes demonstrate that he meets that standard. This leaves County of Dakota, Beth Dehner, and Jennifer Streefland (collectively "**the County**") in an awkward position of having to make Plaintiff's arguments for him only to argue against them.

The Court should deny Plaintiff's request for leave to amend his complaint to include a claim for punitive damages. The County does not ask the Court to deny the request because Plaintiff's proposed amended complaint fails to include an actual claim for punitive damages; requesting them in the prayer for relief is not akin to asserting a claim. The County also does not ask

the Court to deny the request because Plaintiff's proposed amended complaint fails to incorporate additional facts that plausibly allege a claim for punitive damages. Instead, there are two other, more primary reasons the Court should deny the request. First, the Court should deny leave because the proposed amendment is futile as any claim for punitive damages based upon § 1983 could be moot and the County is immune from punitive damages for state-law tort claims. Second, the Court should deny leave because Plaintiff did not show good cause and "extraordinary circumstances" for his requested leave.

## STATEMENT OF FACTS

On June 9, 2022, Plaintiff sent the County a request under the Minnesota Government Data Practices Act for "all emails, notes, visit records, SSIS or Chronos reports, and any other correspondence or information related to" E.K.A.H., Plaintiff, and Julissa Thaler.[1] On July 21, 2022, Plaintiff served the complaint in this lawsuit on the County and filed the same with the district court for State of Minnesota, County of Dakota.[2] The County removed the lawsuit to this Court on August 19, 2022.[3]

---

[1] (Topka Decl., at ¶ 6, Ex. 4, correspondence from J. Tuchscherer to E. Henspeter dated June 9, 2022.)

[2] (*Id.* at ¶ 7.)

[3] (Doc. 3.)

On September 23, 2022, the Court issued a protective order.[4] On October 12, 2022, the County produced 24,157 pages of documents under the protection of the protective order in response to Plaintiff's data practices act request.[5]

The Court issued a pretrial scheduling order on October 25, 2022.[6] The scheduling order indicated the following:[7]

> **DEADLINES FOR FILING MOTIONS**
>
> 1. All motions which seek to amend the pleadings or to add parties must be filed and served on or before **February 1, 2023**.

During the scheduling conference wherein the Court set the deadline to amend pleadings as February 1, 2023, Plaintiff's counsel requested that the Court move the deadline so that it occurred after discovery.[8] The Court denied the request.[9]

On January 17, 2023, Plaintiff's counsel contacted the County's counsel to ask how to access the documents the documents the County produced on

---

[4] (*See generally* Doc. 26.)

[5] (Topka Decl., at ¶ 3, Ex. 1, e-mail from W. Topka to J. Tuchscherer dated October 12, 2022.)

[6] (Doc. 30.)

[7] (Doc. 30 at 3.)

[8] (Topka Decl., at ¶ 8.)

[9] (*Id.*)

October 12, 2022, and to clarify how the County organized them.[10] The County advised that it grouped the documents by custodian and that the documents within each custodian were sorted by date.[11] The County also advised Plaintiff's counsel how he could access the documents and the metadata the County provided.[12] Plaintiff alleges that he subsequently engaged in "a monumental document review effort."[13] Plaintiff argues that this document review extended "several weeks after the scheduled deadline for amending pleadings."[14]

On February 23, 2023, John Giesen appeared as co-counsel for Plaintiff.[15] A month later, on March 23, 2023, Plaintiff served the County with a request for production of documents.[16] This was the first discovery request Plaintiff served on the County.[17]

---

[10] Topka Decl., at ¶ 9; Topka Decl., at ¶ 4, Ex. 2, e-mail from W. Topka to J. Tuchscherer dated January 17, 2023.)

[11] (Topka Decl., at ¶ 9.)

[12] (Topka Decl., at ¶ 4, Ex. 2, e-mail from W. Topka to J. Tuchscherer dated January 17, 2023.)

[13] (Doc. 50 at ¶ 3; *see* Doc. 37 at ¶ 19.)

[14] (Doc. 70 at 9.)

[15] (Doc. 31.)

[16] (Topka Decl., at ¶ 10.)

[17] (*Id.*)

## ARGUMENT

### I. THE COURT SHOULD DENY PLAINTIFF LEAVE TO AMEND HIS COMPLAINT TO INCLUDE A CLAIM FOR PUNITIVE DAMAGES

In deciding whether to grant leave to amend pleadings, the courts first consider whether the proposed amendment is futile.[18] If the proposed amendment passes that test, the legal standard the courts apply depends on the timing of the request for leave. If the plaintiff requests leave after the deadline to amend expires, he must show good cause[19] and "extra ordinary circumstances."[20] Scheduling orders "assure[ ] that at some point both the parties and the pleadings will be fixed … "[21] and this rule "… assures that a magistrate judge's scheduling order is not a frivolous piece of paper, idly

---

[18] *Sanders v. Clemco Indus.*, 823 F.2d 214, 216 (8th Cir. 1987) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)); *see also Hillesheim v. Myron's Cards and Gifts, Inc.*, 897 F.3d 953, 955 (8th Cir. 2018) (citation omitted) ("A district court's denial of leave to amend a complaint may be justified if the amendment would be futile.").

[19] Fed. R. Civ. P. 16(b)(4) (2023); L.R. 16.3; *see Freeman v. Busch*, 349 F.3d 582, 589 (8th Cir. 2003) (citing *In re Milk Prod. Antitrust Litig.*, 195 F.3d 430, 437 (8th Cir. 1999)).

[20] LR 16.3(d); *see also Zarling v. Abbott Laboratories*, 21-CV-0023 (MJD/JFD), 2022 WL 1598232 * 3 (D. Minn. May 20, 2022) ("Under the Local Rules of this District, in addition to demonstrating good cause …, the movant must also demonstrate "extraordinary circumstances" that would warrant extending a scheduling order deadline that has passed.)

[21] Fed. R. Civ. P. 16(b), advisory committee's note to 1983 amendment.

entered, which can be cavalierly disregarded without peril."[22] Here, the Court should deny Plaintiff leave to amend his complaint because the proposed amendment is futile and even if it were not, Plaintiff failed to show good cause and extraordinary circumstances.

### A. The Court should deny Plaintiff leave to amend his complaint because the proposed amendment is futile

"Denial of a motion for leave to amend on the basis of futility means the district court has reached the legal conclusion that the amended complaint could not withstand a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure."[23] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."[24] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[25]

Plaintiff's motion does not identify whether he seeks punitive damages under federal law (§ 1983) or state law (negligence, gross negligence, and

---

[22] *Archer Daniels Midland v. Aon Risk Servs., Inc.*, 187 F.R.D. 578, 582 (D. Minn. 1999).

[23] *Zutz v. Nelson*, 601 F.3d 842, 850 (8th Cir. 2010) (quotation and citation omitted).

[24] *Iqbal v. Ashcroft*, 556 U.S. 662, 678 (2009).

[25] *Id.*

wanton and willful negligence). But because neither of those theories would state a claim upon which relief can be granted, the proposed amendment is futile and the Court should deny leave to amend.

### 1. If Plaintiff bases his claim for punitive damages on federal law (§ 1983), the proposed amendment fails to state a claim upon which relief can be granted so it is futile

The County's motion for judgment on the pleadings outlines why the Court should dismiss Plaintiff's § 1983 claim and why it fails to state a claim upon which relief can be granted.[26] The County respectfully refers the Court to that motion for a robust discussion on the topic, but in short, Plaintiff agreed to voluntarily dismiss the claim. Even if he did not, Plaintiff has not plausibly alleged, among other things, "that the [County] affirmatively placed [Decedent] in a position of danger that he or she would not otherwise have been in"[27] or that the County's conduct shocks the conscience.[28]

If the Court dismisses Plaintiff's § 1983 claim, any claim for punitive damages under § 1983 is moot. Therefore, the Court should deny Plaintiff's request to amend his complaint because the proposed amendment is futile.

---

[26] (See Doc. 32.)

[27] *S.S. v. McMullen*, 225 F.3d 960, 963 (8th Cir. 2000).

[28] *Montgomery v. City of Ames*, 749 F.3d 689, 694-95 (8th Cir. 2014).

### 2. If Plaintiff bases his claim for punitive damages on state law (negligence, gross negligence, and wanton and willful negligence), the proposed amendment fails to state a claim upon which relief can be granted so it is futile

Governmental entities are immune from claims for punitive damages based on state-law torts. "No award for damages on any … claim [against a municipality] shall include punitive damages."[29] "'[M]unicipality' means … any county … ."[30] The County is a county and therefore a municipality. Because municipalities are immune from punitive damages based on state-law torts, and the County is a municipality, the County has immunity for punitive damages based on state-law torts. Therefore, if Plaintiff bases his claim for punitive damages under his state-law tort-claims, Plaintiff's proposed amendment fails to state a claim upon which relief can be granted because the County has immunity and the proposed amendment is futile. Therefore, the Court should deny Plaintiff's request to amend his complaint.

---

[29] Minn. Stat. § 466.04, subd. 1(b).

[30] Minn. Stat. § 466.01, subd. 1.

**B. Even if Plaintiff's proposed amendment was not futile, Plaintiff failed to show good cause and extraordinary circumstances for the amendment**

"The primary measure of good cause is the movant's diligence in attempting to meet the order's requirements."[31] This standard "… is an exacting one, for it demands a demonstration that the existing schedule cannot be reasonably met despite the diligence of the party seeking the extension."[32] In short, the "good cause" standard focuses on "the diligence of the party seeking to modify a scheduling order, as opposed to the litany of unpersuasive excuses, inclusive or inadvertence and neglect, which commonly undergird an untimely motion to amend."[33] Here, Plaintiff has not demonstrated good cause because he was not diligent in pursuing his claims. Plaintiff did not need to review the County's documents before seeking leave to amend and even if he did, he was not diligent in reviewing them.

---

[31] *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 716-17 (8th Cir. 2008) (citing *Rahn v. Hawkins*, 464 F.3d 813, 822 (8th Cir. 2006)); see also Fed. R. Civ. P. 16(b), advisory committee's note to 1983 amendment ("[T]he court may modify the schedule on a showing of good cause if it cannot reasonably be met despite the diligence of the party seeking the extension.").

[32] *Scheidecker v. Arvig Enters.*, 193 F.R.D. 630, 632 (D. Minn. 2000).

[33] *Id.* at 632, n.1.

### 1. Plaintiff did not need to review the County's documents before seeking leave to amend

To the extent that Plaintiff wanted to amend his complaint to include a claim for punitive damages, he could have—and should have—as soon as the County removed the case from state court. Unlike the procedural rules governing claims for punitive damages in Minnesota state courts,[34] the Federal Rules of Civil Procedure allow a plaintiff to include a claim for punitive damages in his original complaint.[35] So when the County removed the case to this Court on August 18, 2022, Plaintiff could have immediately sought leave from the Court to include a claim for punitive damages under § 1983.

Plaintiff's argument that he did not believe that the County was liable for punitive damages until he reviewed the County's documents is belied by Plaintiff's own allegations in the complaint. Plaintiff's complaint clearly evidences the fact that Plaintiff believed that the County should have been held liable for punitive damages at the time he filed his original complaint.[36]

---

[34] *See* Minn. Stat. § 549.20.

[35] *See Russ v. Ecklund Logistics, Inc.*, 19-CV-2719 (DSD/JFD), 2022 WL 856020 * 4 (D. Minn. March 23, 2022); *Morlock v. West Cent. Educ. Dist.*, CIV. 6-96-271, 46 F.Supp.2d 892, 923 (D. Minn. March 29, 1999) (Minnesota state law neither substantively nor procedurally governs the determination of these claims, and the Court cannot justify applying state law to them simply because this case is venued in Minnesota.")

[36] (Doc. 4-1 at ¶¶ 13, 32, 37, 50, 55, 65, 67, 69, 70, 87, 93, 104, 112.)

For example, Plaintiff alleges that the County "failed to act in good faith" and that it acted with "a reckless disregard for [Decedent's] rights and safety."[37] These are not normal allegations of negligence; they are allegations associated with punitive damages.

> **2. Even if Plaintiff needed to review the County's documents before seeking leave to amend, he was not diligent reviewing the County's documents**

The County produced its documents on October 12, 2022, two weeks before the Court issued a scheduling order and nearly four months before the deadline to seek leave to amend pleadings. Plaintiff, however, did not begin to review the County's documents until mid-January 2023, only approximately two weeks before the deadline to amend pleadings. Four months was ample time to review the County's documents and waiting until only two weeks before the deadline to amend pleadings to begin that review is not a shining example of diligence.

Worse yet, Plaintiff had good reason to review the County's documents during that four-month period: the County asked him to dismiss his § 1983 and RMMA claims on September 20, 2022.[38] That Plaintiff ignored the County's documents for three and a half months despite the County's request

---

[37] (Doc. 4-1 at ¶ 114.)

[38] (Doc. 37-1.)

- 11 -

that he dismiss some of his claims is damning to Plaintiff's argument that he acted diligently.

The fact Plaintiff retained co-counsel does not excuse his lack of diligence. If anything, it emphasizes it. The Court has no record of the fact that Plaintiff associated with co-counsel until February 23, 2023, when Mr. Giesen filed his notice of appearance. But by the then, more than three weeks had passed since the deadline to amend the pleadings passed.

Any argument that Plaintiff might make that the manner in which the County produced the documents somehow protracted or elongated his review is disingenuous. The County produced its documents grouped by custodian and then sorted by date within each custodian.[39] This process is relatively standard in civil cases. Plaintiff's counsel knew how they were produced because he contacted the County's counsel on January 17, 2023 and inquired about the issue.

This case is not in the "early stages of the litigation." The County removed this lawsuit to this Court on August 18, 2022, so it has been pending for almost eight (8) months. Discovery is set to end in about a month on June 5, 2023. The County is already gearing up for summary judgment.

---

[39] (Topka Decl., at ¶ 9.)

Plaintiff's lack of diligence is not an isolated incident. There have been a significant number of incidents that also evidence Plaintiff's lack of diligence. For example, Plaintiff did not serve a request for production of documents until March 23, 2023, less than two months before the end of discovery. As another example, Plaintiff took 106 days to answer the County's interrogatories, always promising something soon and then not delivering.

Even if four months was not sufficient time to review the County's documents, Plaintiff did not offer evidence demonstrating that he was somehow unaware of the Court's deadline. He also did not offer evidence demonstrating that circumstances prevented him from seeking leave from the Court to amend the deadline to amend the pleadings before the deadline expired.

The Court's decision in *Zarling v. Abbott Laboratories* is instructive.[40] In that case, Abbott produced documents between August 20, 2021, and November 17, 2021.[41] On December 3, 2021, the deadline to file motions for

---

[40] 21-CV-0023 (MJD/JFD), 2022 WL 1598232 (D. Minn. May 20, 2022).

[41] *Zarling*, 2022 WL 1598232 * 1.

leave to amend the pleadings elapsed.⁴² Zarling filed a motion for leave to amend his complaint to allege punitive damages on February 25, 2022.⁴³

Abbott objected to Zarling's motion to amend as untimely and lacking good cause and extraordinary circumstances.⁴⁴ Zarling countered that his delay related him needing to "amass the required factual basis during discovery to file such a motion."⁴⁵

This Court agreed with Abbott and denied Zarling's motion for leave to amend the pleadings.⁴⁶ The Court reasoned that Zarling made his motion "two and a half months" after the deadline to amend passed.⁴⁷ It further reasoned that while not necessarily accepting Zarling's argument that he needed discovery to amass the factual basis for his claim for punitive damages, even if Zarling did, nothing prevented him from bringing a timely motion to extend the deadline to amend before it passed.⁴⁸

---

⁴² *Zarling*, 2022 WL 1598232 * 1.

⁴³ *Id.* at * 2.

⁴⁴ *Id.* at * 3.

⁴⁵ *Id.* at * 2.

⁴⁶ *Zarling*, 2022 WL 1598232 * 3.

⁴⁷ *Id.*

⁴⁸ *Id.* at * 4.

Here, just as in *Zarling*, Plaintiff had the documents he claimed he needed to amass the factual basis for his motion to amend before the deadline to amend passed. Here, just as in *Zarling*, Plaintiff did not complete his document review until after the deadline passed. Here, just as in *Zarling*, Plaintiff filed his motion to amend about two and a half months after the deadline to amend passed. Finally, here, just as in *Zarling*, nothing prevented Plaintiff from bringing a timely motion to extend the deadline to amend before the deadline expired.

While this case is like *Zarling*, it is also unlike *Zarling* and those dissimilarities should give the Court even more reason to deny Plaintiff's motion for leave. While in *Zarling* the plaintiff only had the documents he claimed he needed to review before filing a motion to amend for about two weeks before the deadline to amend expired, Plaintiff had them a full four months.

This case is both like and unlike *Zarling*. Those similarities and differences should cause the Court to reach the same result it did in *Zarling*: deny Plaintiff's request for leave to amend his complaint to include a claim for punitive damages.

## CONCLUSION

As discussed in more depth above, the Court should deny Plaintiff leave to amend his complaint to include a claim for punitive damages for two

reasons. First, Plaintiff did not show good cause. Second, even if he did, Plaintiff's proposed amended complaint would be futile.

Dated: April 24, 2023  **KATHRYN M. KEENA**
**DAKOTA COUNTY ATTORNEY**

By: /s/William M. Topka
　　William M. Topka (#0339003)
Assistant County Attorney
1560 Highway 55
Hastings, Minnesota 55033
(651) 438-4438
william.topka@co.dakota.mn.us

*Attorneys for County of Dakota, Beth Dehner, and Jennifer Streefland*