UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| TORY ALEXANDER HART, as Trustee for the Heirs and Next of Kin of E.K.A.H., | Case No. 22-CV-2035 (MJD/JFD) |
| Plaintiff, | **ORDER** |
| v. | |
| COUNTY OF DAKOTA; and BETH DEHNER and JENNIFER STREETLAND, individually and in their capacity as employees of Dakota County, | |
| Defendants. | |

This matter is before the Court on Plaintiff's motion to amend the Complaint, Defendants' motion to amend the Answer, and Defendants' motion for a protective order. (Dkt. Nos. 88, 142, 151.) Plaintiff wants to amend the Complaint by adding "survival claims" for negligence under 28 U.S.C. § 1983 and to seek punitive damages. Defendants want to amend their answer to make explicit that they assert the affirmative defense of comparative fault. The Amended Pretrial Scheduling Order (Dkt. No. 127) required motions to amend the pleadings to be filed no later than February 1, 2023. Since that date has come and gone, both parties also move the Court to amend the Scheduling Order to allow their motions to amend the Complaint and the Answer, respectively. Defendants also

1

seek a protective order to foreclose discovery Plaintiffs are seeking from an Assistant Dakota County Attorney.

The Court heard oral argument on the motions to amend on August 9, 2023 (Hr'g Mins., Dkt. No. 165) and on the Motion for a Protective Order on May 31, 2023. (Dkt. No. 131.) At both hearings, Andrew Davick, Esq. and John Giesen, Esq. represented Plaintiff Tory Hart, while Assistant County Attorney William Topka represented Defendants Dakota County, Beth Dehner, and Jennifer Streefland. (*Id.*) For the following reasons, the Court grants in part and denies in part Plaintiff's motion to amend, grants Defendant's motion to amend, but denies Defendants' Motion for a Protective Order.

I.  **BACKGROUND**

On May 19, 2022, six-year-old EKAH was murdered by his mother, Julissa Thaler.[1] By the time of his murder, EKAH had been the subject of child protection proceedings in Dakota County for nearly a year and a half. Those child protection proceedings had included consideration of whether it was safe to return EKAH to his mother.

This case began as a wrongful death lawsuit filed by Plaintiff Tory Hart, who is the father of EKAH, as trustee for the heirs and next-of-kin of his deceased son. In January 2021, Dakota County assumed "interim custody and legal responsibility" of EKAH after a Minnesota state district court in Dakota County granted a Child in Need of Protection or Services ("CHIPS") petition the County brought for EKAH. (Giesen Decl. Ex. A at 6–11, Dkt. No. 48-1.) Defendant Beth Dehner, a social worker for Dakota County, concluded in

---

[1] Ms. Thaler was convicted after a jury trial of first-degree murder and sentenced to imprisonment for life.

August 2021, that reuniting EKAH with Ms. Thaler would be unsafe and that the risk level for doing so was "high." (2nd Giesen Decl. Ex. B at 1, Dkt. No. 147-1.) In October of 2021, Ms. Dehner and Defendant Jennifer Streefland, another Dakota County social worker, intended to reunite EKAH and Plaintiff. (*Id.* Ex. C at 118, Dkt. No. 147-2; *Id.* Ex. D. 55:15–56:15, Dkt. No. 147-3.) But later that month, Ms. Dehner, Ms. Streefland, Sheri Larson (EKAH's guardian *ad litem*), and Jennifer Jackson (an Assistant Dakota County Attorney) met and decided that EKAH would not be reunited with Plaintiff. Instead, EKAH would spend more time with both of his parents. (Giesen Decl. Ex. A at 259.) In December 2021, Dakota County placed EKAH with Ms. Thaler for a trial home visit. (*Id.* at 17, 82.) On May 22, 2022, the CHIPS case was closed with EKAH in the custody of his mother. (2d Giesen Decl. Ex. C 78:22–79:3, 249:8–15.) A few days later, Ms. Thaler strapped her six-year-old son into his car safety seat, then fired nine rounds from a shotgun at close range into his head and torso, killing him. (*Id.* Ex. J at 1.) Additional relevant facts are incorporated into the discussion below.

## II.   LEGAL STANDARDS

Leave to amend a pleading after the time to amend of right has expired is governed by Federal Rule of Civil Procedure 15(a)(2), which provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." This is a generous standard but it is not without limits. Courts may deny leave to amend for "compelling reasons such as undue delay, bad faith, or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the non-moving party, or futility of the

3

amendment." *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 715 (8th Cir. 2008) (quoting *Moses.com Sec., Inc. v. Comprehensive Software Sys., Inc.*, 406 F.3d 1052, 1065 (8th Cir. 2005)).

A proposed amendment to a complaint is futile if "the amended complaint could not withstand a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *Cornelia I. Crowell GST Tr. v. Possis Med., Inc.*, 519 F.3d 778, 782 (8th Cir. 2008). Rule 12(b)(6) requires dismissal when a complaint fails "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plaintiff need not plead "detailed factual allegations," but mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not do. *Id.* at 555. For a claim to be facially plausible, the plaintiff must include "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In applying this standard, the Court accepts the factual allegations as true and views them in the light most favorable to the plaintiff. *Healy v. Fox*, 46 F.4th 739, 743 (8th Cir. 2022).

If a party seeks to amend a complaint after the deadline to do so has passed, then before it attempts to satisfy Fed. R. Civ. P. 15(a)(2)'s "justice so requires" standard, it must first show "good cause" to amend the scheduling order under Fed. R. Civ. P. 16(b)(4) so that the motion to amend can be considered even though it is untimely. "[T]he primary measure" of good cause is "the movant's diligence in attempting to comply with the scheduling order." *Schnuck Markets, Inc. v. First Data Merch. Servs. Corp.*, 852 F.3d 732, 740 (8th Cir. 2017) (citing *Sherman*, 532 F.3d at 716).

**A. Plaintiff's Motion to Amend the Scheduling Order so as to add a Negligence Claim is Granted, but Plaintiff's Motion as to his Proposed § 1983 Claim is Denied.**

Motions to amend the pleadings were due on or before February 1, 2023. (Amend. Sched. Order at 3, Dkt. No. 127.) Plaintiff moves the Court to modify the scheduling order and grant Plaintiff leave to add two survival claims—one for civil rights violations under § 1983 and another for negligence. "A survival claim is predicated upon the *decedent's* claim for damages sustained during his lifetime. On the other hand, a wrongful death action creates a new and separate claim or cause of action for the damages sustained by [the] decedent's *estate* as a result of his death." *Est. of Guled v. City of Minneapolis*, 179 F. Supp. 3d 895, 898 (D. Minn. 2016), *aff'd sub nom. Est. of Guled by & through Abdi v. City of Minneapolis*, 869 F.3d 680 (8th Cir. 2017) (quoting *Jaco v. Bloechle*, 739 F.2d 239, 242 (6th Cir. 1984)). The proposed "survival claims detail the immense pain, suffering, and humiliation EKAH suffered while he was still alive, all as a direct result of Defendants' negligence and constitutional violations before he died, from the time unsupervised visits commenced up to the time the shotgun was drawn on him by his known abuser." (Pl.'s Mem. Supp. Mot. to Amend at 9, Dkt. No. 145.)

In May 2023, the Minnesota legislature enacted significant changes regarding survival actions, noting that the changes were intended to affect pending and future lawsuits. 2023 Minn. Sess. Law Serv. Ch. 52, §§ 32–34 (S.F. 2909)(West). Before the May 2023 amendments, Minnesota Statute § 573.01 stated that "a cause of action arising out of an injury to the person dies with the person of the party in whose favor it exists . . . ,"

5

whereas the new version permits a cause of action to "survive[] the death of any party in accordance with section 573.02." *Id.*

Plaintiff argues that this "sea-change in Minnesota survival law, along with the Minnesota Legislature's express intent for the new law to apply to pending actions" provides good cause to modify the amendment deadline, and that justice requires that Plaintiff be granted leave to add the survival claims. (Pl.'s Mem. Supp. Mot. to Amend at 1.) The May 2023 amendments to Minnesota's law also allow plaintiffs to seek "all damages." Minn. Stat. § 573.02, subdivs. 1–2. Thus, Plaintiff claims that "EKAH is entitled to 'all damages' he would have been entitled to recover had he lived, including his immense pain and suffering before the murder." (Pl.'s Mem. Supp. Mot. to Amend at 13.) Defendants oppose the motion, as described below.

### i. *Plaintiff May Not Amend the Complaint to Include a Survival Claim under § 1983.*

Plaintiff seeks to amend his complaint to add a survival claim under 42 U.S.C. § 1983, alleging that Ms. Dehner and Ms. Streefland deprived EKAH of his civil rights without the due process of law that the Fourteenth Amendment requires of state actors. A § 1983 claim must allege deprivation "of a right, privilege, or immunity secured by the Constitution and laws of the United States through the conduct of persons acting under color of state law." *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986).

Defendants contend Plaintiff's proposed § 1983 claim is futile because Plaintiff fails to plausibly plead that Defendants violated EKAH's substantive due process rights under the Fourteenth Amendment as Plaintiff's claim does not allege a state-created danger. (*Id.*

6

at 7.)[2] "The state-created danger theory requires that state officials 'act[] affirmatively to place someone in a position of danger *that he or she would not otherwise have faced'* before a constitutional duty to render protective services will arise." *Anderson for Anderson v. City of Minneapolis*, No. 16-CV-4114 (SRN/FLN,) 2018 WL 1582262, at *16 (D. Minn. Mar. 30, 2018), *aff'd sub nom. Anderson as trustee for next-of-kin of Anderson v. City of Minneapolis*, 934 F.3d 876 (8th Cir. 2019) (quoting *S.S v. McMullen*, 225 F.3d 960, 962 (8th Cir. 2000) (en banc)). Defendants maintain that "the County did nothing more than remove EKAH from an allegedly abusive home and return[] him to the same allegedly abusive home," equating the facts of this case to those in *McMullen*, 225 F.3d 960, and *Terry B. v. Gilkey*, 229 F.3d 680 (8th Cir. 2000), in which the Eighth Circuit found that state actors did not create a danger to children who were abused, although the state actors were aware of abuse or claims of abuse. (*Id.* at 10–12.)

The leading case on the state-created danger issue is *DeShaney v. Winnebago County Department of Social Services,* 489 U.S. 189, 195 (1989), in which "the [United States Supreme] Court approved summary judgment against Joshua DeShaney, who claimed that although the state removed him temporarily from the custody of his abusive father, it did not do so permanently, and that his father finally beat him so severely that he

---

[2] Magistrate judges decide motions to amend a scheduling order or to amend a complaint by order. Objections to a magistrate judge's order are reviewed by the district court judge only for clear error. However, motions to deny leave to amend on the grounds of futility are measured by the standard of Fed. R. Civ. P. 12(b)(6), and 12(b)(6) motions are dispositive. The rule in this district is that magistrate judges decide motions to amend the pretrial schedule by order, not by report and recommendation, but that those portions of an order that analyze the futility of a proposed amendment will be reviewed *de novo*, rather than for clear error.

suffered permanent brain damage." *McMullen,* 225 F.3d at 962. The *DeShaney* Court held that while the due process clause protected citizens from the government, "nothing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors." *DeShaney*, 489 U.S. at 195. Consistent with this principle, the Court in *Deshaney* held that the state does not have a constitutional duty to protect a child who has been in the custody of the state after returning the child to his parents, finding that "when it returned him to his father's custody, it placed him in no worse position than that in which he would have been had it not acted at all; the State does not become the permanent guarantor of an individual's safety by having once offered him shelter." *Id.*, 489 U.S. at 201; *see Gilkey*, 229 F.3d at 683–84.

"The line between action and inaction" is "thin and elusive." *McMullen*, 225 F.3d at 963. In determining whether a plaintiff has alleged a constitutional violation of substantive due process rights, courts focus not on the harms that the child suffered, but on the allegations about any actions by defendant that increased the danger to the child. *See id.* 964. Even grossly negligent acts do not "shock the conscience" so as to state a violation of substantive due process. *Id.* A plaintiff must clear an exceptionally high bar to demonstrate that a state actor's conduct is a constitutional tort.

While the proposed amended complaint is replete with allegations of Defendants' negligence and their chilling indifference to Ms. Thaler's failures to care for her child, Plaintiff does not allege an affirmative act on Defendants' part that amounts to a state-created danger. The state removed EKAH from his mother's home and temporarily placed

8

him in foster care, yet "in the peculiar circumstances of this case the state's act is the same as if it had done nothing." *Id.*

Defendants maintain that Plaintiff could have raised this claim at the inception of this lawsuit, and that any attempt to raise it now lacks the requisite good cause and extraordinary circumstances under Rule 16 to justify amending a scheduling order. (Defs.' Mem. Opp'n Mot. Amend at 7, Dkt. No. 157.)[3] Defendants overlook the fact that Plaintiff's proposed claim is based on a sweeping amendment to Minn. Stat. § 573.01 that did not exist at the time Plaintiff filed his original complaint. Instead, Defendants direct their argument toward the damages that Plaintiff seeks for this proposed claim under Minnesota's wrongful death statute, Minn. Stat. § 573.02, arguing that the May 2023 amendments have no bearing on this lawsuit because "Minnesota law does not form the basis of damages under § 1983 death cases." (*Id.* at 5.) But the fact that the measure of damages available under a survival claim and a wrongful death claim changed with the May 2023 amendment does not bear on whether Plaintiff has stated a survival claim, only on the recovery that might be available if such a claim succeeds. Defendants offer no authority to refute that the Minnesota legislature has enacted an amendment that fundamentally changes survival law in Minnesota. Defendants' argument to that end is meritless.

---

[3] Defendants state that Plaintiff lacks good cause and extraordinary circumstances to permit amendment of the Complaint. Since good cause and extraordinary circumstances is the Rule 16 standard to amend a scheduling order, not the Rule 15 standard to amend a complaint, the Court takes it that here Defendants are stating that Plaintiff does not satisfy the Rule 16 standard and ought not to be permitted to amend the scheduling order.

Defendants further argue that *Heck v. Humphrey*, 512 U.S. 477 (1994), bars Plaintiff's claims, but the Court is unpersuaded. The Supreme Court in *Heck* established what is commonly called the "favorable determination" rule, which requires civil rights plaintiffs who seek to recover for an allegedly unconstitutional conviction or imprisonment to first show that the underlying criminal proceeding ended in a way that was favorable to the plaintiff, for example, an acquittal. Defendants do not present any authority expanding the *Heck* doctrine to circumstances beyond a prisoner challenging their conviction or imprisonment, and the Court found no such authority in its own research. Defendants reference only a footnote of dicta in which the Eighth Circuit noted that "[s]ome, or perhaps all, of [Plaintiff's] claims for damages under 42 U.S.C. § 1983 might be barred by the *Heck* doctrine, but because the issue was not raised by the parties we do not address it." *Mitchell v. Dakota Cnty. Soc. Servs.*, 959 F.3d 887, 897 n.3 (8th Cir. 2020) (internal citation omitted). The Court will not prevent Plaintiff's claims from proceeding based on a passing comment in a footnote in which the Eighth Circuit said only that it would not address the question.

Nor do Defendants carry the day with their suggestion that the *Rooker-Feldman* abstention doctrine bars Plaintiff's claims. "The *Rooker-Feldman* doctrine provides that, with the exception of habeas corpus petitions, lower federal courts lack subject matter jurisdiction over challenges to state court judgments." *Mosby v. Ligon*, 418 F.3d 927, 931 (8th Cir. 2005) (citing *Ballinger v. Culotta,* 322 F.3d 546, 548 (8th Cir. 2003)). This doctrine does not apply here because Plaintiff is not asking this Court to review the Dakota County court's decision; instead, "[Plaintiff] request[s] relief for the Defendants' allegedly

10

illegal acts and omissions during the proceedings." *Kvalvog v. Park Christian Sch., Inc.*, 66 F.4th 1147, 1152 (8th Cir. 2023).

The Court finds that allowing Plaintiff to amend his complaint to add the proposed § 1983 survival claim would be futile because of *DeShaney*'s construction of the state-created danger doctrine in cases where a child is removed by the state from an abusive environment, then returned by the state to that environment. This Court is bound by controlling precedent from the United States Supreme Court. While the recent change to Minnesota law means Plaintiff has met Rule 16's standard for amending the scheduling order, the Court denies Plaintiff's motion to amend the Complaint and add the proposed § 1983 claim because *DeShaney* makes such a claim futile.

### ii. *Plaintiff May Amend the Complaint to add a Survival Claim for Negligence.*

Plaintiff claims that Defendants' negligence caused EKAH "conscious pain and suffering . . . embarrassment, [and] humiliation" and moves the Court to add a survival claim for those damages. (2d Giesen Decl. Ex. A, Am. Compl. ¶ 160.) Defendants contend that this proposed claim is a collateral attack on the state court's determinations in the CHIPS case, and as such is barred by the doctrine of *res judicata*. (Defs.' Mem. Opp'n Mot. Amend at 18–19.) *Res judicata* promotes finality by forbidding a party from pursuing in a subsequent lawsuit claims that were or could have been raised and decided in a prior lawsuit. *Laase v. Cnty. of Isanti,* 638 F.3d 853, 858 (8th Cir. 2011). Federal law requires that federal courts "give preclusive effect to state-court judgments whenever the courts of

11

the State from which the judgments emerged would do so." *Allen v. McCurry,* 449 U.S. 90, 96 (1980).

"The law of the forum that rendered the first judgment controls the *res judicata* analysis." *St. Paul Fire & Marine Ins. Co. v. Compaq Computer Corp.,* 539 F.3d 809, 821 (8th Cir. 2008). The Court therefore looks to Minnesota law to determine whether *res judicata* bars Plaintiff's claims. Under Minnesota law, *res judicata* applies as an absolute bar to a later claim when: "(1) the earlier claim involved the same set of factual circumstances; (2) the earlier claim involved the same parties or their privies; (3) there was a final judgment on the merits; [and] (4) the estopped party had a full and fair opportunity to litigate the matter." *Hauschildt v. Beckingham,* 686 N.W.2d 829, 840 (Minn. 2004). If those elements are met, *res judicata* precludes not only claims actually litigated but also every claim that could have been litigated. *State v. Joseph,* 636 N.W.2d 322, 327 (Minn. 2001). The analysis of Defendants' *res judicata* contention does not take the Court long; on its face, this federal case is distinct from the state CHIPS case because personal injury claims were not at issue in the CHIPS case. Accordingly, *res judicata* does not bar Plaintiff's claims.

Plaintiff's motion is granted as to his proposed survival claim for negligence.

### *iii.     Plaintiff May Amend the Complaint to Seek Punitive Damages.*

Defendants contend that the Court should deny Plaintiff's request in his proposed complaint to seek punitive damages. Although Plaintiff did not discuss punitive damages in his memorandum, they are available under Minnesota's wrongful death statute, as provided under Minn. Stat. § 549.20, which governs punitive damages. Minn. Stat.

§ 573.02. First, Defendants assert that the law-of-the-case doctrine bars Plaintiff's request because the Court previously denied Plaintiff's request for punitive damages, but Defendants offer no authority to support this argument. Regardless, the Court disagrees. *See* Fed. R. Civ. P. 15(a)(2). The Court denied Plaintiff's previous request to amend the scheduling order based on a lack of diligence, and therefore the Court did not address Plaintiff's initial motion to amend the complaint "without any specific finding from the Court on the question of futility." (Hr'g Tr. 16:16–19; 17:18–21; Dkt. No. 117.) In denying Plaintiff's previous motion, the Court denied that specific motion and did not deny all potential future requests seeking punitive damages. (Order Denying Mot. Amend, Dkt. No. 85.)

Second, Defendants oppose Plaintiff's request to amend the complaint and add punitive damages, arguing that the amendment would be futile. To determine whether such a claim is futile, federal courts look to Minnesota state substantive law on punitive damages, Minn. Stat. § 549.20, to find the elements that a party must prove to be awarded punitive damages and measures Plaintiff's factual allegations against the substantive standards of that statute. *See Hamilton v. Franchoice, Inc.*, No. 19-CV-1426 (MJD/ECW), 2020 WL 2191219, at *6 (D. Minn. May 6, 2020) ("Section 549.20 governs the scope of punitive damages, and . . . Plaintiffs need to plausibly allege a claim for punitive damages that meets the substantive requirements of that statute . . . .").

Minn. Stat. § 549.20 states:

(a) Punitive damages shall be allowed in civil actions only upon clear and convincing evidence that the acts of the defendant show deliberate disregard for the rights or safety of others.

> (b) A defendant has acted with deliberate disregard for the rights or safety of others if the defendant has knowledge of facts or intentionally disregards facts that create a high probability of injury to the rights or safety of others and:
> > (1) deliberately proceeds to act in conscious or intentional disregard of the high degree of probability of injury to the rights or safety of others; or
> > (2) deliberately proceeds to act with indifference to the high probability of injury to the rights or safety of others.

Minn. Stat. § 549.20, subdiv. 1.

"Deliberate disregard occurs when 'the defendant has knowledge of facts or intentionally disregards facts that create a high probability of injury to the rights or safety of others.'" *Id.* (quoting Minn. Stat. § 549.20, subdiv. 1(b)). More than negligence or even gross negligence is required to sufficiently allege a claim for punitive damages. *See Dolphin Kickboxing Co. v. Franchoice, Inc.*, 335 F.R.D. 393, 401 (D. Minn. 2020). "In Minnesota, negligence is generally defined as the failure to exercise such care as persons of ordinary prudence usually exercise under such circumstances." *Anderson v. Rugged Races LLC*, 496 F. Supp. 3d 1270, 1277 (D. Minn. 2020) (citing *Domagala v. Rolland*, 805 N.W.2d 14, 22 (Minn. 2011)) (cleaned up). "Minnesota law defines gross negligence as without even scant care but not with such reckless disregard of probable consequences as is equivalent to a willful and intentional wrong." *Dolphin Kickboxing Co.*, 335 F.R.D. at 401 n.4 (citing *Greer v. Walsh Constr. Co.*, No. 15-CV-465 (PAM/JSM), 2016 WL 6892109, at *8 (D. Minn. Feb. 23, 2016)) (cleaned up).

Defendants contend that "[b]ecause the state court blessed all of the defendants' actions, the defendants could not have knowledge of or could not have intentionally disregarded facts that made injury highly probable or deliberately proceeded with

conscious or intentional disregard or at least indifference to the risk of injury." (Defs.' Mem. Opp'n Mot. to Amend at 25.) Defendants provide no authority to support this conclusory argument. The Court finds that Plaintiff has plausibly alleged facts demonstrating that Defendants were deliberately indifferent to the risk of injury to EKAH. (*See, e.g.* Am. Compl. ¶¶ 71, 82, 86, 94, 97, 100.) The Court grants Plaintiff's motion to add punitive damages related to the negligence claim under Minn. Stat. § 573.02.[4]

**B. The Court Denies Defendants' Motion to Amend the Scheduling Order and Plead Comparative Fault as an Affirmative Defense.**

Rule 8(c) requires that a party "must affirmatively state any avoidance or affirmative defense . . . ." Fed. R. Civ. P. 8(c)(1). "Generally, failure to plead an affirmative defense results in a waiver of the defense." *First Union Nat'l Bank v. Pictet Overseas Trust Corp.*, 477 F.3d 616, 622 (8th Cir. 2007). But "[a]s long as 'an affirmative defense is raised in the trial court in a manner that does not result in unfair surprise, technical failure to comply with Rule 8(c) is not fatal.'" *Crutcher v. MultiPlan, Inc.*, 22 F.4th 756, 765–66 (8th Cir. 2022) (quoting *First Union Nat'l Bank*, 477 F.3d at 622).

Defendants assert that during the meet and confer process, Plaintiff notified them for the first time that he did not believe that Defendants included comparative fault in their answer. (Defs.' Mem. Supp. Mot. Amend at 4, Dkt. No. 154 (citing Topka Decl. ¶¶ 9, 11

---

[4] Defendants argue that Plaintiff's request for punitive damages is also futile under federal law because Plaintiff fails to allege facts that "shock the conscience" so as to satisfy the state-created danger theory. (Defs.' Mem. Opp'n Mot. Amend at 22.) As described above, because the Court finds that Plaintiff did not include facts in his proposed amended complaint that amount to a state-created danger, Plaintiff may not pursue punitive damages under § 1983, only under negligence.

(Dkt. No. 155).) Thus, Defendants move to amend the scheduling order and then amend their answer under Rule 8(c) to specify "comparative fault" as a defense. (*Id.* at 2.) Defendants' eighth affirmative defense currently reads: "Plaintiff's claims may be barred, in whole or in part, by any or all of the affirmative defenses contemplated by the . . . Federal Rules of Civil Procedure . . . . [T]he County incorporates all such affirmative defenses as if set forth in full herein." (Answer at 3 ¶ 8, Dkt. No. 5.)

Plaintiff argues that Defendants' motion should be denied "for lack of diligence and futility," the standard that the Court applied to Plaintiff in denying his earlier motion to amend. (Pl.'s Mem. Opp'n Mot. Amend at 1, Dkt. No. 159; *see* Hr'g Tr. 16:16–17:23.) Plaintiff claims that Defendants did not inform Plaintiff that "they wished to avoid liability at trial by asserting that EKAH's guardian ad litem or Minnesota Judicial Branch officers are at fault for believing what Defendants' sworn court reports said." (Pl.'s Mem. Opp'n Mot. Amend at 4.)

Because the Court previously found that Plaintiff lacked diligence, the Court finds that the same determination is appropriate here. While Plaintiff's motion to amend is based on a sea-change in Minnesota law, Defendants do not demonstrate any extraordinary circumstances or provide good cause showing that they diligently pursued an affirmative defense that they could have raised in their answer to Plaintiff's original complaint. Allowing Defendants to amend their affirmative defenses would prejudice Plaintiff. *See Wilkus v. Fergus Falls Med. Grp., P.A.*, No. 08-CV-1365 (MJD/RLE), 2009 WL

10711138, at *4 (D. Minn. Sept. 1, 2009).[5] Defendants' motion is granted in part, in that they may amend their answer to assert the affirmative defense of comparative fault only as to Plaintiff's new survival claim.

### C. The Court Denies Defendants' Motion for a Protective Order.

Defendants move the Court for an order precluding Plaintiff from deposing Ms. Jackson, the Assistant Dakota County Attorney who represented Dakota County in the CHIPS case concerning EKAH. (Defs.' Mem. Supp. Mot. Protective Ord. at 1, Dkt. No. 92; Jackson Decl. at ¶ 3, 5–6.) In October 2021, a "permanency planning team," consisting of the individual Defendants, Ms. Jackson, and Ms. Larson met to discuss whether Ms. Dehner "c[ould] move EKAH and when." (Giesen Decl. Ex. A at 33–34, 259.) Leading up to this meeting, Ms. Dehner indicated that she hoped to remove EKAH from his mother's custody and place him with Plaintiff. (*Id.* at 33.) After the meeting, EKAH was not placed with Plaintiff, but rather the team decided to "increase visits w[ith] both parents." (*Id.* at 259.)

Plaintiff seeks to learn what led to this decision. For example, Plaintiff references a communication between two other Dakota County employees in which Ms. Dehner relayed that Ms. Jackson told her that there was insufficient evidence against Ms. Thaler to prevail at a custody trial, which is ostensibly why EKAH was returned to Ms. Thaler's custody. (Tuchsherer Decl. Ex. E at 1, Dkt. No. 110.) Additionally, Ms. Dehner commented to other

---

[5] The Court need not, and does not, decide at this point whether Defendants' affirmative defense language which they claim incorporates all affirmative defenses is sufficient to state the affirmative defense of comparative fault.

17

Dakota County employees that she "wanted to place [EKAH] with [Plaintiff] last November, but [she] was told no." (Giesen Decl. Ex. A at 168.)

Defendants move to preclude Plaintiff from deposing Ms. Jackson for several reasons. Pointing out that Ms. Jackson acted as legal counsel in both the CHIPS case and this case, Defendants state that the information is privileged but that even if it is not, Plaintiff is able to get the information from other sources. Specifically, Defendants' counsel in this case states that he "employed [Ms. Jackson] to assist . . . in answering some of the interrogatories that were legal in nature," and that she "plays an integral role in the County's defense of this case." (Defs.' Mem. Supp. Mot. Protective Ord. at 1, 4.) Similarly, Defendants contend that Ms. Jackson's work product from the CHIPS case is Defendants' work product in this case because "[t]he County intends to follow Ms. Jackson's lead and use the guidance she provided in outlining the statutory framework in the CHIPS case as a defense to Plaintiff's claim here that the County was negligent for not following the statutory framework." (*Id.* at 1–2, 4.) Defendants next argue that Plaintiff cannot demonstrate that other individuals' testimony would not include the information that he seeks, but that in any event, testimony from Ms. Dehner, Ms. Streefland, and Ms. Larson may also be entitled to attorney-client or work-product privileges. (*Id.* at 10–12.) Yet, Defendants concede that "any claim or privilege" is "arguably waived" regarding "the October 2022 meeting that Ms. Larson attended or the various emails the County produced between Ms. Jackson and third parties like Plaintiff's counsel in the CHIPS case or Ms. Larson." (*Id.*) Finally, Defendants argue that "Plaintiff cannot establish that the

18

information Ms. Jackson possesses that Plaintiff cannot obtain from other parties is crucial to the preparation of his case." (*Id.* at 12.)

Plaintiff intends to depose Ms. Jackson in order to "figure out who was responsible for deciding what happened to his son," contending that her testimony is crucial to "find out what happened in the CHIPS case, specifically (1) her view of what happened at the October PPT meeting," and "(2) the frustration disclosed elsewhere by Defendants that EKAH 'had to' be relegated to his severely mentally ill mother instead of his sane, loving parent, which per Defendants was due to Attorney Jackson's advice." (Pl.'s Mem. Opp'n Protective Order at 8–9, Dkt. No. 113.) Plaintiff considers Ms. Jackson a material fact witness, and therefore seeks her testimony as to her recollections about what took place at the October meeting. (*Id.* at 5, 8.) Further, Plaintiff argues that her legal advice was put at issue in this case, and thus seeks to inquire as to the advice given, not her mental impressions. (*Id.* at 4, 6, 10, 11.)

The Court denies Defendants' motion and will allow Ms. Jackson's deposition to proceed, but limits Plaintiff's inquiry to Ms. Jackson's impressions of the October PPT meeting and her advice that has been put at issue in this matter. Plaintiff offers assurances that he "will not inquire into Attorney Jackson's current role, and to the extent he does, Defendants may interpose objections during the deposition." (*Id.* at 11–12.) The Court will preside over the deposition and will rule on any objections in real time. The deposition shall be held at a mutually agreeable time in Courtroom 6A in the United States Courthouse in Saint Paul, Minnesota.

19

**CONCLUSION**

Accordingly, based on all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Plaintiff's Motion to Amend the Scheduling Order (Dkt. No. 142) is **GRANTED in part and DENIED in part** as set forth fully above;

2. Defendants' Motion to Amend the Scheduling Order (Dkt. No. 151) is **GRANTED**, as set forth fully above; and

3. Defendants' Motion for a Protective Order (Dkt. No. 88) is **DENIED**.

Date: September 11, 2023            *s/ John F. Docherty*
                                    JOHN F. DOCHERTY
                                    United States Magistrate Judge