UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| TORY ALEXANDER HART, as Trustee for the Heirs and Next of Kin of E.K.A.H., <br><br>Plaintiff, <br><br>v. <br><br>COUNTY OF DAKOTA; and BETH DEHNER and JENNIFER STREEFLAND, individually and in their capacity as employees of Dakota County, <br><br>Defendants. | Case No. 22-CV-2035 (MJD/JFD) <br><br>**REPORT AND RECOMMENDATION** <br><br>***FILED UNDER TEMPORARY SEAL*** |

This matter is before the Court on Defendants' Motion to Enforce the Partial Settlement or for Partial Judgment on the Pleadings. (Defs.' Mot., Dkt. No. 32.) On May 3, 2023, the Hon. Michael J. Davis referred this motion to the undersigned United States Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1. The undersigned held a hearing on the motion on June 6, 2023, where Andrew Davick and John Giesen, Esqs. represented Plaintiff and William Topka, Esq. represented Dakota County, Beth Dehner, and Jennifer Streefland ("the County"). (Hr'g Mins. 1, Dkt. No. 135.) The undersigned recommends that the County's motion be denied.

1

## I. BACKGROUND

Days after regaining full custody of her son from Dakota County Social Services, Julissa Thaler murdered her son, six-year-old E.K.A.H., by strapping him into his car seat and shooting him in the head and torso with a shotgun. (Order 2–3, Dkt. No. 169.) This case is about whether Dakota County and its social workers are liable for E.K.A.H.'s death because they urged the state court to close E.K.A.H.'s child protection case and reunite him with his mother. (*Id.*)

### A. Procedural History

Plaintiff, as trustee for the heirs and next of kin of his son, brought this action against the County and three of its employees[1] in August of 2022. (Compl., Dkt. No. 4.) The complaint included five counts: (I) negligence, (II) gross negligence, (III) wanton and willful negligence, (IV) violations of Minnesota's Reporting of Maltreatment of Minors Act[2], and (V) conspiracy to deprive E.K.A.H. of his civil rights in violation of 42 U.S.C. § 1983. (Compl. ¶¶ 117–49.) In March of 2023, the County filed this motion for the enforcement of a partial settlement agreement, or for a partial judgment on the pleadings. (Dkt. No. 32.) The County argued that Count IV of the complaint should be dismissed because the Reporting of Maltreatment of Minors Act ("R.M.M.A.") does not provide a private cause of action. (Defs.' Mem. Supp. 3.) The County further argued that Count V, alleging § 1983 violations, should be dismissed for two reasons: First, the parties had a

---

[1] One defendant, E.K.A.H.'s guardian ad litem, has since been dismissed from this action with prejudice. (Compl. ¶ 7; Judgment, Dkt. No. 23.)

[2] *See generally* Minn. Stat. §§ 260E.01, -.03, -.05, -.06, -.12 (2022).

2

binding agreement to dismiss it. (*Id.*) Second, it failed to state a claim upon which relief could be granted. (*Id.*)

Non-dispositive motion practice has since narrowed the scope of Defendants' motion. At oral argument, Plaintiff agreed to dismiss the R.M.M.A. count. (Tr. of June 6, 2023 Mot. Hr'g 23:22–24:12, Dkt. No. 137.) Count IV is no longer part of the operative complaint, and the Court will not address the part of the motion which challenged it. (*See* Am. Compl., Dkt. No.178.) Nor is it necessary to address Defendants' request for judgment on the pleadings as to the § 1983 violations, because in connection with an amendment to the Complaint, the undersigned has already concluded that Plaintiff cannot recover under § 1983. In September, the Court granted Plaintiff's motion (Dkt. No. 142) to amend his complaint in light of a recent change in Minnesota law allowing survival actions. (Order 8, 11–12, Dkt. No. 169.) The undersigned found that Plaintiff could allege survival claims in the context of negligence but could not do the same regarding his § 1983 claim because binding precedent bars relief under § 1983 on these facts. (*Id.* at 11 (citing *DeShaney v. Winnebago Cnty. Dept. of Soc. Servs.*, 489 U.S. 189, 195 (1989)).)

> The Court finds that allowing Plaintiff to amend his complaint to add the proposed § 1983 survival claim would be futile because of *DeShaney's* construction of the state-created danger doctrine in cases where a child is removed by the state from an abusive environment, then returned by the state to that environment. This Court is bound by controlling precedent from the United States Supreme Court.

(*Id.*) The reasoning of the earlier order is equally applicable to this motion because courts apply the same standard—the Rule 12(b)(6) standard—when they evaluate whether a claim is futile and when they decide to dismiss a claim on the pleadings under Rule 12(c). *Ashley*

3

*Cnty. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009) (observing that courts apply a Rule 12(b)(6) standard when considering judgments on the pleadings); *Cornelia I. Crowell GST Tr. v. Possis Med., Inc.*, 519 F.3d 778, 782 (8th Cir. 2008) (noting that a Rule 12(b)(6) standard applies in assessing futility). The undersigned will not repeat his Rule 12(b)(6) analysis here. Suffice it to say that Plaintiff objected to that portion of the earlier order that prohibited, on futility grounds, amendment of the Complaint to add counts under § 1983. Judge Davis is now reviewing the undersigned's decision in light of Plaintiff's objections.

With the R.M.M.A. no longer in play, and the undersigned's analysis of Plaintiff's § 1983 claim on review, there is only one question for this Court to answer: whether there was an enforceable partial settlement agreement as to the § 1983 claim. The County argues that counsel for the parties reached an oral agreement to dismiss the claim during a January 11, 2023 phone call, while Plaintiff vehemently denies making such an agreement. (Declaration of William Topka, ¶¶ 19–20, Dkt. No. 37; Declaration of Joshua Tuchscherer ¶¶ 1–4, Dkt. No. 50.) Because one of the bases for this Court's jurisdiction is the diverse citizenship of the parties, Minnesota law controls the analysis. *See Ashley Cnty.*, 552 F.3d at 665. Applying Minnesota law, the Court concludes that the parties did not reach an enforceable partial settlement agreement.

### B. Relevant Facts

"[A] settlement agreement is a contract." *In re Airline Ticket Comm'n Antitrust Litig.*, 268 F.3d 619, 623 (8th Cir 2021)) (quoting *Michalski v. Bank of Am. Ariz.*, 66 F.3d 993, 996 (8th Cir. 1995)) (applying Minnesota law). The events surrounding the alleged conclusion of a settlement agreement in this case show that the parties did not form a

4

contract. The Court has primarily used counsels' sworn affidavits and exhibits to construct a chronology of events.

### i. The Parties' Negotiations on the § 1983 Claim

Mr. Topka, attorney for the County, recalls that Mr. Tuchscherer, attorney for Plaintiff, first suggested he might be willing to dismiss the § 1983 claim when the County removed this case to federal court based on federal question and diversity jurisdiction. (Topka Decl. ¶ 6.) On September 20, 2022, while Mr. Topka was writing a motion to dismiss the § 1983 claim and the R.M.M.A. claim, he emailed Mr. Tuchscherer to see if he would dismiss those claims, arguing that neither were viable. (*Id.* ¶ 7; Topka Decl., Ex. 1, Dkt. No. 37-1.) He followed up on October 5, 2022. (Topka Decl., Ex. 2, Dkt. No. 37-2.) It is not clear from the record whether Mr. Tuchscherer responded.

On October 14, 2022 the parties had a phone call to discuss Rule 26(f) topics, and the issue of dismissing the § 1983 claim and the R.M.M.A. claim came up again. (Topka Decl. ¶ 11.) Mr. Tuchscherer "advised that he would consider the issue." (*Id.*) On November 16, 2022, Mr. Topka followed up with an email saying that he believed Mr. Tuchscherer was "leaning towards dismissing" the counts when they last spoke but invited Mr. Tuchscherer to correct him if he was mistaken. (Topka Decl., Ex. 3, Dkt. No. 37-3.) Mr. Topka attached a partial stipulation to dismiss both counts to his email, saying that if Mr. Tuchscherer did not want to dismiss the counts, he would "completely understand." (*Id.*) Mr. Topka stated that he just hoped he could get an answer one way or another so he knew whether to file his motion to dismiss. (*Id.*) Mr. Tuchscherer responded the same day, saying he had not "had a chance to fully consider your position and confer with my clients

given my schedule." (Topka Decl., Ex. 4, Dkt. No. 37-4.) He asked if the parties could reconnect on the issue in early December. (*Id.*) Mr. Topka agreed. (Topka Decl., Ex. 5, Dkt. No. 37-5.)

On December 12, 2022, Mr. Topka followed up with Mr. Tuchscherer by email. (Topka Decl., Ex. 6, Dkt. No. 37-6.) The parties scheduled a call to discuss the issue, which eventually took place on January 11, 2023. (Topka Decl. ¶¶ 16–18.)

### ii.    *The January 11, 2023 Discussion and Subsequent Communications*

On January 11, 2023, Mr. Topka and Mr. Tuchscherer again discussed the possible dismissal of the § 1983 and R.M.M.A. claims. (Topka Decl. ¶ 19; Tuchscherer Decl. ¶ 1, Dkt. No. 52.) The call was memorable to Mr. Topka because Mr. Tuchscherer took the call in his car as he drove through a snowstorm to depositions in another state. (Topka Decl. ¶ 19.) On the substance, Mr. Topka recalls:

> Mr. Tuchscherer advised me that Plaintiff would dismiss the § 1983 but not the RMMA claim. Mr. Tuchscherer explained that he wanted to engage in discovery on that claim first. He said that he would revisit the idea of dismissing it after discovery. I told Mr. Tuchscherer that I thought that this was a reasonable compromise and if Plaintiff dismissed the § 1983 claim, the County would not file a motion to dismiss the RMMA claim. Mr. Tuchscherer agreed and told me to provide him with a stipulation for dismissal.

(Topka Decl. ¶ 20.) In contrast, Mr. Tuchscherer remembers:

> I recall driving through inclement weather to depositions in North Dakota. I did not promise to dimiss [sic] the case immediately without signing a stipulation of dismisasl [sic]. I simply listened to Mr. Topka's thoughts about why the § 1983 claim failed. I told him that Plaintiff would consider dismissing the § 1983 claim. I asked him to send me a draft of a stipulation of dismissal and that I would consider his position with my client.

6

(Tuchscherer Decl. ¶ 2.) Later that morning, Mr. Topka sent an email with an attachment that he described as a "draft stipulation and order for dismissal of the 1983 claim." (Topka Decl., Ex. 8, Dkt. No. 37-8.) He said he was agreeable to Mr. Tuchscherer's suggestion that the parties revisit the dismissal of the R.M.M.A. claim after discovery closed. (*Id.*)

In the subsequent weeks, the parties exchanged emails on unrelated topics using the same email thread as the January 11 email. (Topka Decl., Exs. 9–11, Dkt. Nos. 37-9–37-11.) The parties did not discuss the draft stipulation. On February 22, 2023, Mr. Topka sent a deficiency letter covering various discovery issues. (Topka Decl., Ex. 12, Dkt. No. 37-12.) At the end of the letter, Mr. Topka wrote that the County "did not conduct discovery on the claim under 42 U.S.C. § 1983 because [Mr. Tuchscherer] advised that Plaintiff was willing to dismiss it." (*Id.*) Stating that he had not heard of any developments, Mr. Topka asked for an update. (*Id.*) Mr. Giesen, co-counsel to Mr. Tuchscherer, responded to the letter on March 1, 2023, saying: "We have not signed the stipulation of dismissal. We do not agree to dismiss this claim." (Topka Decl., Ex. 13, Dkt. No. 37-13.)

Mr. Topka responded the next day, saying "Plaintiff's refusal to dismiss the 1983 claim is extremely concerning." (Tuchscherer Decl., Ex. A, Dkt. No. 50-1.) He reiterated his view that the § 1983 claim was "meritless," adding: "I believe that the parties have a binding partial settlement agreement for Plaintiff to dismiss the 1983 claim. The County relied on that agreement when conducting discovery." (*Id.*) Mr. Topka announced his plan to file a motion to enforce this alleged agreement. (*Id.*) Mr. Tuchscherer reports that this was the first time he learned that Mr. Topka construed their January 11 conversation as a binding settlement agreement. (Tuchscherer Decl. ¶ 4.) For his part, Mr. Tuchscherer

7

believed that the January 11 conversation, like the many conversations about the R.M.M.A. and § 1983 claims that preceded it, were "simply good faith efforts to determine if the issues in this lawsuit could be narrowed." (*Id.* at ¶ 1.) "Nothing Mr. Topka or I did or said even remotely suggested there would be a binding oral agreement for a voluntary dismissal prior to the execution of a Rule 41 stipulation of dismissal." (*Id.* at ¶ 2.) Mr. Topka filed this motion on March 14, 2023. (Dkt. No. 32.)

## II. LEGAL STANDARD

District courts have inherent authority to enforce settlements in cases that are currently pending on their docket. *Smith v. Unum Life Ins. Co. of Am.*, No. 19-CV-1659 (MJD/LIB), 2020 WL 1172028, at *3 (D. Minn. Feb. 5, 2020) (citing *Barry v. Barry*, 172 F.3d 1011, 1013 (8th Cir. 1999)), *R&R adopted*, 2020 WL 1169427 (D. Minn. Mar. 11, 2020). The courts have broad discretion in determining the procedure for resolving these motions. *Barry*, 172 F.3d at 1013. They may hold evidentiary hearings if facts are in dispute.[3] *Id.* (citing *Stewart v. M.D.F., Inc.*, 83 F.3d 247, 251 (8th Cir.1996)). Evidentiary hearings are not always necessary. *Stewart*, 83 F.3d at 251. ("[A]s a general rule, an evidentiary hearing should be held when there is a substantial factual dispute over the

---

[3] Plaintiff argues that if the affidavits conflict about whether the parties made an enforceable contract, the Court should put the question to the jury at trial. (Pl.'s Mem. Opp'n 24–25.) Defendants find this suggestion "laughable," arguing that a factual dispute regarding a motion to enforce a settlement agreement should be resolved by the Court on the facts before it and, if necessary, after an evidentiary hearing. (Defs.' Reply Mem. 5.) Defendants are correct that the Court can resolve this question. At oral argument, both parties agreed that there was no additional information an evidentiary hearing would uncover. (Tr. 15:1–15, 35:15–36:11.)

existence or terms of a settlement. . . . But this rule presupposes that there are essential issues of fact that can only be properly resolved by such a hearing.")

Again, when federal subject-matter jurisdiction is based on diversity of citizenship, state law determines whether a settlement exists. *In re Airline Ticket Comm'n*, 268 F.3d at 623. Settlements are highly favored, and courts do not lightly cast them aside. *Schumann v. Northtown Ins. Agency, Inc.*, 452 N.W.2d 482, 483 (Minn. Ct. App. 1990). Minnesota courts use principles of contract law to construe alleged settlement agreements, *Jallen v. Agre*, 119 N.W.2d 739, 743 (Minn. 1963). A contract is formed when there is a "specific and definite offer, acceptance, and consideration." *Comm. Assoc., Inc. v. Work Connection, Inc.*, 712 N.W.3d 772, 782 (Minn. Ct. App. 2006). A party can accept a contract explicitly, or can accept impliedly, for example by being silent in the face of a duty to deny. *Schumann*, 452 N.W.2d at 484. In any event, whether a contract is formed "is judged by the objective conduct of the parties and not their subjective intent." *Com. Assocs., Inc.*, 712 N.W.2d at 782.

Oral agreements of counsel are binding on their clients when counsel acts with settlement authority. *Schumann*, 452 N.W.2d at 484; *Jallen*, 119 N.W.2d at 743; *Rosenberg v. Townsend, Rosenberg & Young, Inc.*, 376 N.W.2d 434, 436–37 (Minn. Ct. App. 1985); *Ghostley v. Hetland*, 204 N.W.2d 821, 823 (1973). If "there is a dispute about whether a settlement was reached, it is ordinarily for the trial court to determine what the facts are." *Jallen*, 119 N.W.2d at 743 (describing a case where there was no record of counsel's oral negotiations and where counsel were in "violent disagreement" as to whether a settlement had been reached).

### III. ANALYSIS

The parties do not dispute that dismissing one claim in exchange for an agreement to not challenge another claim is adequate consideration for a settlement agreement. (*See* Topka Decl. ¶ 20.) The only issues that require a decision from the Court are whether an offer was made, and whether it was accepted.

If an "offer is clear, definite, and explicit, and leaves nothing open for negotiation, it constitutes an offer," which, once accepted, will bind the party who made the offer. *Lefkowitz v. Great Minneapolis Surplus Store, Inc.*, 86 N.W.2d 689, 691 (1957). If, on the other hand, "an offer is so indefinite as to make it impossible for a court to decide what it means and to fix exactly the legal liabilities of the parties, its acceptance cannot result in an enforceable contract." *Holt v. Swenson*, 90 N.W.2d 724, 728 (1958). Here, Mr. Topka contends that when he told Mr. Tuchscherer that the County would not challenge the R.M.M.A. claim if Plaintiff dismissed the § 1983 claim, he made an offer. (Defs.' Mem. Supp. 16, 18.) Mr. Tuchscherer says that there was no offer; instead, he says his request to Mr. Topka was as an invitation to bargain, not an offer manifesting his client's intent to be bound. (Pl.'s Mem. Opp'n at 21.)

The Court finds that Mr. Topka made an offer capable of acceptance on January 11, 2023. Responding to previous suggestions that Plaintiff might dismiss the § 1983 claim, reiterating his prior arguments that the R.M.M.A. claim was baseless, and following up on his previously emailed stipulation to dismiss both counts, Mr. Topka called Mr. Tuchscherer. He reiterated his position about the claims but Mr. Tuchscherer rejected his offer to settle both claims in exchange for Mr. Topka's forbearance on a motion to dismiss.

Mr. Tuchscherer then said he would be willing to dismiss the § 1983 claim but not the R.M.M.A. claim. In response, Mr. Topka proposed that if Plaintiff dismissed the § 1983 claim, he would not bring a motion to dismiss the R.M.M.A. claim on the County's behalf. This was an offer. Mr. Topka stated that he was willing to exchange explicit promises of performance (dismissing one claim, withholding a motion to dismiss), both easily measured, and he did not suggest there was any room for further negotiation.

The question then becomes whether Mr. Tuchscherer accepted the offer. During the call, Mr. Tuchscherer said he would speak to his client and invited Mr. Topka to send a draft stipulation for them to review. Acceptance occurs when the parties agree to all material terms. *Ryan v. Ryan*, 193 N.W.2d 295, 297 (1971) (citing *Jallen*, 119 N.W.2d at 739). The acceptance itself must be unequivocal and mirror the terms of the offer. *Minar v. Skoog*, 50 N.W.2d 300, 302 (Minn. 1951). Agreements that contemplate the execution of a written document at a later time are enforceable. *Jackson v. Fed. Rsrv. Emp. Benefit Sys.*, No. 08-CV-4873 (DSD/FLN), 2009 WL 2982924, at *4 (D. Minn. Sept. 14, 2009) (citing *Jallen*, 119 N.W.2d at 743)).

Mr. Topka argues that Mr. Tuchscherer accepted the offer he made to dismiss the § 1983 claim but keep the R.M.M.A. claim, and that this acceptance formed an oral contract.[4] (Defs.' Mem. Supp. 18.) On his view, both parties understood the terms and

---

[4] Defendants argue that if oral agreements were not binding, meeting and conferring would be fruitless. (Defs.' Reply Mem. 7–8.) That is incorrect. The benefit of meeting and conferring is the possibility of an agreement to narrow the issue or resolve it entirely, or even merely to better understand the scope of a disagreement. The parties receive some benefits from meeting and conferring even if no agreement is reached and receive the

11

agreed, but Mr. Tuchscherer regretted his decision as he onboarded co-counsel, reviewed the County's discovery productions, and found evidence that strengthened his case. (Defs.' Reply Mem. 2, Dkt. No. 63.) But Mr. Tuchscherer says he did not agree to dismiss anything—and would never have done so because he and his team were still combing through voluminous discovery. (Pl.'s Mem. Opp'n 17–18; Tuchscherer Decl. ¶ 3.) At any rate, he says, once Mr. Tuchscherer and Plaintiff learned how much the County knew about Ms. Thaler's instability when they returned E.K.A.H. to her care, they had no interest in signing the stipulation. (Pl.'s Mem. Opp'n 1.)

The weight of the evidence shows that Mr. Tuchscherer did not accept the offer. Mr. Topka made an effective offer during the January 11 phone call and although Mr. Tuchscherer had the power to accept it then and there, the Court finds that he did not do so. Mr. Tuchscherer had a professional obligation to inform his client of the new terms of the County's offer (it would accept a stipulation that dismissed only the § 1983 claim, not both the § 1983 claim and the R.M.M.A. claim). *See* Minn. R. Prof. Conduct 1.4, cmt. 2. It is reasonable that Mr. Tuchscherer needed time to consult with his client and that he would not accept the offer until he had done so. Mr. Topka's email following the conversation supports this notion; it described the stipulation as a "draft," indicating that the agreement was not fully integrated and ready for execution. Mr. Topka's correspondence with Mr. Tuchscherer following the conversation suggests that he was awaiting the results of Mr. Tuchscherer's conference with his client, not that he believed

---

benefits of agreements reached during a meet and confer whether the agreement is in the form of a written stipulation or a handshake.

12

the deal was done. (Topka Decl., Ex. 12 ("The County sent over a stipulation for dismissal on the [§ 1983] count but has not heard back. *Please advise on the status*.") (emphasis added).) The Court cannot conclude that the parties reached an agreement on the January 11 phone call.

The County argues that if there was no agreement during the January 11 call, Plaintiff impliedly accepted the agreement when he said nothing in response when Mr. Topka emailed the proposed stipulation. (Defs.' Mem. Supp. 17.) The County points the Court to *Holt v. Swenson*, where the Minnesota Supreme Court held that silence can constitute acceptance "where the relation between the parties is such that the offeror is justified in expecting a reply, or where the offeree is under a duty to reply." 90 N.W.2d 724, 728 (1958). But the facts in this case are distinguishable from those in *Holt*. There, an attorney was seeking to recover his fee from a former client who claimed that there was no contract between them for a contingent fee. *Id.* at 728. The Minnesota Supreme Court found that the attorney had made an offer where he would receive a minimum fee of one third of any amount recovered and, in certain circumstances which were left vague, that amount could increase to half of the recovery. *Id.* The *Holt* court found that the ambiguity about the conditions under which the attorney was entitled to the larger fee did not prevent the attorney's proposal from becoming a valid offer. *Id.* It concluded that an acceptance of this offer simply suggested that the parties intended to leave that term "to future determination." *Id.* From this, the court found that even if the client had said nothing in response to the offer it would have found a contract because the client "encouraged the defendant to

continue the pursuit of his claims, knowing of plaintiff's offer made under circumstances under which plaintiff was justified in expecting a reply." *Id.*

This case is different. Granted, Mr. Topka was entitled to expect a rely from Mr. Tuchscherer, but on the grounds of courtesy, not because his relationship with Tuchscherer was the sort in which silence implies consent. Mr. Tuchscherer made no indications analogous to those of the client in *Holt*, who urged his lawyer to keep pursuing his case without explicitly agreeing to the fee arrangement. Mr. Tuchscherer did not, for example, seek confirmation that Mr. Topka would not file his motion to dismiss the § 1984 claim. While Mr. Topka argues that he relied on Mr. Tuchscherer's acceptance when he decided not to conduct discovery on the § 1983 claim, he does not say that Mr. Tuchscherer was aware of that reliance before his February 22 letter. In fact, when the extent of this disagreement came to light, Mr. Tuchscherer stated that he would not object to "any additional written discovery regarding the 1983 claim" and promised to disclose the requested information within seven business days. (Tuchscherer Decl., Ex. A.)

### IV.    CONCLUSION

Mr. Tuchscherer did not accept Mr. Topka's settlement offer explicitly or by his silence. This conclusion is supported not only by Mr. Tuchscherer's sworn declaration, but also by Mr. Topka's description of the stipulation he sent to Mr. Tuchscherer on January 11th as a "draft" stipulation and his follow up email asking Plaintiff's counsel to "advise on the status" of the stipulation. (Topka Decl., Ex. 12.) Because there was no acceptance, there is no need to address whether Mr. Tuchscherer had the authority to accept the offer, or whether the alleged settlement included all material provisions.

Accordingly, based on all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Defendants' Motion to Enforce the Partial Settlement Agreement or for Partial Judgment on the Pleadings be **DENIED**.

2. Count IV of the Complaint (Dkt. No. 4) be **DISMISSED** with prejudice, consistent with the agreement of the parties and the Amended Complaint (Dkt. No. 178).

3. This Report and Recommendation will remain under seal until December 22, 2023 because it references sealed documents. The parties are ordered to file any requests for redaction on or before December 13, 2023.

Date: November 22, 2023                *s/ John F. Docherty*
                                       JOHN F. DOCHERTY
                                       United States Magistrate Judge


**NOTICE**

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation.

A party may respond to those objections within 14 days after being served a copy of the objections. *See* Local Rule 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).