UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| Tory Hart, trustee for the heirs and next-of-kin of E.K.A.H.,<br>　　　　　　Plaintiff,<br><br>v.<br><br>County of Dakota, Beth Dehner, and Jennifer Streefland,<br>　　　　　　Defendants. | Court File No.: 22-cv-02035 (MJD/JFD)<br><br>**THE DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR *DAUBERT* MOTION TO EXCLUDE CERTAIN EXPERT TESTIMONY** |

## INTRODUCTION

This *Daubert* motion seeks to exclude testimony from two of Tory Hart's, trustee for the heirs and next-of-kin of EKAH ("**Plaintiff**"), expert witnesses because their opinions stray from the fields in which they qualify as experts—psychiatry and psychology—into fields in which they have no discernable expertise: child protection social work.

Phillip Resnick, M.D., is a licensed psychiatrist and Alan Tepp, Ph.D., is a forensic psychologist. Plaintiff hired both to provide opinions. Despite being apparent experts in the fields of psychiatry and forensic psychology, Drs. Resnick and Tepp opine on the standard of care to which child protection social workers are held and whether Beth Dehner ("**Dehner**") and Jennifer Streefland ("**Streefland**") breached that standard of care. This foray into

foreign waters is curious given Plaintiff retained a third expert—a social worker—who is actually qualified to give—and does give—the same opinion. Nevertheless, because neither Dr. Resnick nor Dr. Tepp are qualified to give the opinions they seek to give or because such opinions are within the purview of the Court or the jury, the Court should exclude the opinions and prohibit these witnesses from testifying regarding those matters at trial.

## **LEGAL STANDARD**

Federal Rule of Evidence 702 allows a party to offer expert testimony, but only from "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education."[1] The trial court's role regarding expert testimony is that of "gatekeeper;" before a party offers expert testimony, the trial court must ensure that the proffered testimony complies with this rule of admissibility.[2] "The expert's testimony must be grounded in an accepted body of learning or experience in the expert's field, and the expert must explain how the conclusion is so grounded."[3]

---

[1] Fed. R. Evid. 702.

[2] *Wagner v. Hesston Corp.*, 450 F.3d 756, 758 (8th Cir. 2006).

[3] Fed. R. Evid. 702., Advisory Committee Notes, cmt. 2000 Amendments. (citing American College of Trial Lawyers, Standards and Procedures for Determining the Admissibility of Expert Testimony after *Daubert*, 157 F.R.D. 571, 579 (1994)).

"[A] witness is [not qualified as] an expert simply because he claims to be."[4] Courts do not analyze qualification in the abstract but instead, determine whether the witness' qualifications provide a foundation for the witness to give an opinion on a specific question or issue.[5] A witness can qualify as an expert in one subject matter but may not have sufficient knowledge or practical experience to testify as an expert about another.[6] Courts determine whether the witness is qualified as an expert on a particular subject "… by comparing the area in which the witness has superior knowledge, skill, experience, or education with the subject matter of the witness's testimony."[7] "If the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to

---

[4] *American Family Ins. Group v. JVC Americas Corp.,* 00-cv-27 (DSD/JMM), 2001 WL 1618454 at * 2 (D. Minn. Apr. 30, 2001) (citing to *Pride v. Bic Corp.*, 218 F.3d 566, 577 (6th Cir. 2000)); *see also General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) ("[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the ipse dixit of the expert."); *Weisgram v. Marley Co.*, 169 F.3d 514, 518–519 (8th Cir. 1999), aff'd, 528 U.S. 440 (2000) (fire and causation expert who admitted he was not "an electrical expert" was not qualified to testify that cause of a fire was heater malfunction)).

[5] *See Lippe v. Howard*, 287 F. Supp. 3d 1271, 1279 (W.D. Okla. 2018).

[6] *Id.*

[7] *Carroll v. Otis Elevator Co.*, 896 F.2d 210, 212 (7th Cir.1990) (citing *Gladhill v. General Motors Corp.*, 743 F.2d 1049, 1052 (4th Cir.1984)).

the facts."[8] As gatekeepers, courts determine whether an expert is qualified by analyzing the contents of the disclosures made in accordance with the Federal Rules of Civil Procedure because the rules require a party's expert disclosures to contain "the witness's qualifications."[9]

Even if an expert witness is qualified to give an opinion, there are limits to the types of opinions an expert can give. For example, an expert cannot testify regarding legal conclusions or legal matters because "[m]atters of law are for the trial judge, and it is the judge's job to instruct the jury on them."[10] Also, expert "[o]pinions that merely tell the jury what result to reach are not admissible."[11] Finally, opinions that are "within the knowledge or experience

---

[8] Fed. R. Evid. 702., Advisory Committee Notes, cmt. 2000 Amendments.

[9] Fed. R. Civ. P. 26(a)(2)(B)(iv) (2023); *Eniva Corp. v. Glob. Water Sols., Inc.*, 440 F. Supp. 2d 1042, 1052 (D. Minn. 2006) ("One of the purposes of the expanded disclosure requirement for expert reports is to provide in substance the expert's direct testimony at trial. This requirement is intended to allow the opposing party, if he or she chooses, to dispense with the expert's deposition); *see Khoday v. Symantec Corp.*, 93 F. Supp. 3d 1067, 1077 (D. Minn. 2015), *as amended* (Apr. 15, 2015) (analyzing a *Daubert* challenge solely on the expert disclosure and report.)

[10] *Southern Pine Helicopters, Inc. v. Phoenix Aviation Managers, Inc.*, 320 F.3d 838, 841 (8th Cir. 2003).

[11] *Lee v. Anderson*, 616 F.3d 803, 808-09 (8th Cir. 1993) (internal quotations omitted).

of lay people" are not admissible.[12] An expert who "draws inferences or reaches conclusions within the jury's competence" does not provide useful or helpful testimony.[13]

## STATEMENT OF FACTS

Plaintiff disclosed expert reports from three witnesses: Jeanine Lukes, MSW,[14] Phillip Resnick, M.D.,[15] and Alan Tepp, Ph.D.[16] This motion only challenges Drs. Resnick's and Tepp's opinions.

### A. Dr. Resnick's qualifications

Dr. Resnick "holds a Bachelor's degree in psychology from Case Western Reserve University (1959) as well as a medical degree from Case Western Reserve University (1963)."[17] Since 1971, he has been certified by the

---

[12] *Pelster v. Ray*, 987 F.2d 514, 526 (8th Cir. 1993) (quotations and citation omitted).

[13] *Nichols v. Am. Nat'l Ins. Co.*, 154 F.3d 875, 883 (8th Cir. 1998); *see also Williams v. Pro-Tech, Inc.*, 908 F.2d 345, 348-49 (8th Cir. 1990) (expert's opinion properly excluded where jury was "apprised of all the relevant facts" and "equally able to draw the asserted conclusion").

[14] (Doc. 199-4 at 8-76.)

[15] (Id. at 77-146.)

[16] (Doc. 199-4 at 147-198; Doc. 199-5 at 1-72 (collectively "Tepp Report".))

[17] (Doc. 199-4 at 1.)

American Board of Psychiatry and Neurology and has been certified by the American Board of Forensic Psychiatry since 1979.[18]

## B. Subject matter of Dr. Resnick's testimony that the defendants seek to exclude

Plaintiff retained Dr. Resnick to "assess[] whether Dakota County Social Services …. Child Protection workers acted reasonably in their handling of the [EKAH's] case."[19] Dr. Resnick's "curriculum vitae … states [his] qualification to perform this assessment."[20] Dr. Resnick gave the following opinions that are the subject of this *Daubert* motion:

- It is my opinion with reasonable medical certainty that the Child Protection social workers at the Dakota County Social Services (DCSS) did not act reasonably when they recommended closing the case of [EKAH] and returning custody of [EKAH] to his mother, Julissa Thaler because it created a substantial risk that Ms. Thaler would physically harm [EKAH].

- It is my opinion with a reasonable degree of medical certainty that Ms. Dehner did not act reasonably when she ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

- It is my opinion with a reasonable degree of medical certainty that Ms. Dehner did not act reasonably upon learning from ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ by not notifying the

---

[18] (Doc. 199-4 at 1.)

[19] (Doc. 199-4 at 117.)

[20] (*Id.*)

> Court of this additional information which suggested that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓.

- It is my opinion with a reasonable degree of medical certainty that Ms. Dehner did not act reasonably when she omitted some important information from her May 3, 2022, court report recommending closing the case and returning custody to Ms. Thaler.

- It is my opinion with a reasonable degree of medical certainty that if the DCSS child protection social workers had not recommended closing the case and return [EKAH's] custody to Ms. Thaler, it is more likely than not that Ms. Thaler would not have murdered [EKAH] on March 20, 2022.  As long as DCSS kept [EKAH's] case open and provided oversight of Ms. Thaler and [EKAH], Ms. Thaler markedly reduced her use of addictive drugs and accepted psychiatric care.  Once that oversight was removed, the likelihood of Ms. Thaler causing serious harm to her child sharply increased.  Ms. Thaler carried out her murder 10 days after DCSS oversight was removed.[21]

### C. Dr. Tepp's qualifications

"Dr. Tepp holds a Bachelor of Science degree in Psychology and Learning Disabilities (1977) as well as a doctorate in Psychiatry and Behavioral Science from Northwestern University (1982)."[22]  He "has specialized in forensic evaluations and consultations since 1984 … [and] has been a forensic

---

[21] (Doc. 199-4 at 137, 139-145.)

[22] (Doc. 199-4 at 2.)

psychology instructor and professor at New York Medical College (2016-Present).[23]

**D. Subject matter of Dr. Tepp's testimony that the defendants seek to exclude**

Plaintiff retained Dr. Tepp to "opine on the mental state of the subject child, [EKAH], for the twelve months prior to his death … ."[24] Dr. Tepp gave the following opinions that are the subject of this *Daubert* motion:

- It is my opinion, based upon a reasonable degree of psychological certainty, that Beth Dehner and Jennifer Streefland were unreasonable in the social work decision making.

- Dehner and Streefland were employees of Dakota County and were acting within the scope of their employment and were responsible for protecting and advocating for [EKAH].

- Dehner and Streefland did not appreciate the seriousness of Julissa Thaler's mental health and her potential harmful nature. They should have. There was obvious red flags which they failed to recognize, investigate and inform the Court.

- Given Thaler's actions and obvious psychological and mental health struggles, recommending that the case be closed and custody returned to Thaler was unreasonable.

- Streefland and Dehner did not appreciate the seriousness of Julissa Thaler's mental health history.

---

[23] (Doc. 199-4 at 2.)

[24] (Doc. 199-4 at 158.)

- 8 -

- Dehner and Streefland failed to report Julissa Thaler's ███████████████████████████████████████ ███████████████████████████████

- [Dehner and Streefland] failed to prevent [EKAH's] horrific maltreatment and his eventual death.

- [Dehner and Streefland] permitted Julissa Thaler to commit maltreatment and egregious harm upon [EKAH].

- Dehner and Streefland failed to exercise due care to protect [EKAH] and failed to establish or otherwise follow a Safety and Permanency Plan for Thaler to protect [EKAH].

- Dehner and Streefland repeatedly permitted Thaler to violate her Safety and Permanency Plan and acted unreasonable in permitting [EKAH] to be reunified with Thaler.

- Dehner and Streefland failed to create a reasonable safety plan for [EKAH], filed to end unsupervised visits, failed to end the trial home visits, failed when recommending case closure and failed to protect [EKAH] from Thaler by terminating parental rights and or transfer custody.

- Dehner failed to ████████████████████████████ ████████████████████████████████████████ ███████████████████████████████

- It is my opinion that these facts, in light of what was known and what ought to have been known to Dehner and Streefland about Thaler and her relationships with her son, constituted a situation where [EKAH] was in jeopardy of neglect and harm without proper care and intervention. Dehner and Streefland knew or should have known that [EKAH] would not be safe in Thaler's care but instead endorsed giving her sole custody over [EKAH], which is a total failure to exercise due care.

- Dehner and Streefland had an obligation to protect and advocate for [EKAH's} safety. They failed in that duty and [EKAH} suffered as a direct result.

- Further, as a result of Dehner's and Streefland's unreasonable decision to recommend case termination and returning custody to Thaler, the emotional and physical abuse continued and escalated, resulting in the tragic, premature, and wrongful death of [EKAH] by Julissa Thaler.[25]

## ARGUMENT

### I. THE COURT SHOULD EXCLUDE DR. RESNICK'S OPINIONS BECAUSE HE IS NOT QUALIFIED TO GIVE THEM OR THE LAW DOES NOT ALLOW HIM TO GIVE SUCH OPINIONS

Dr. Resnick is a psychiatrist and is no doubt qualified to give opinions related to psychiatry. But the opinions he plans to give in this case are not related to psychiatry. Instead, they relate to child protection social work. For example, his opinions regarding the reasonableness of Dehner's and Streefland's recommendation in closing the child in need of protection or services ("**CHIPS**") case, investigating certain matters surrounding Thaler, and allegedly omitting information in court reports has nothing to do with psychiatry but everything to do with the standard of care to which a reasonable child protection social worker must adhere.

---

[25] (Doc. 199-5 at 69-72.)

There is no evidence that Dr. Resnick is qualified to provide standard of care to which child protection social workers must adhere and then give an opinion as to whether Dehner and Streefland violated it. Plaintiff's expert disclosure, Dr. Resnick's report, and Dr. Resnick's curriculum vitae do not evidence any discernable education, training, or experience in child protection social work, let alone enough to qualify Dr. Resnick as an expert witness in the area. Thus, there is no evidence that Dr. Resnick is qualified to give his opinions so the Court should exclude them.

Another district court addressed an identical issue in *Olson v. Macalester College*.[26] In that case, the district court excluded certain expert testimony because the plaintiff's expert disclosures did not identify how she was qualified to give the opinion she gave.[27] The district court there explained that the expert's disclosure "disclose[d] no education, training, or experience in the area" upon which the expert gave an opinion.[28]

Even if Dr. Resnick did have the expertise to give the opinions the defendants are challenging, the Court should still exclude his opinions because his expert report did not identify the principles or methods he used to reach

---

[26] 21-cv-1576 (ECT/DJF), ____ F.Supp.3d ____, 2023 WL 4353820 (D. Minn. July 5, 2023).

[27] *Olson*, 2023 WL 4353820, *24.

[28] *Id.*

- 11 -

his conclusions. Put another way, Dr. Resnick did not identify how he used his alleged expertise to reach his conclusions. The district court in *Olson* did the same. There, it excluded the expert's opinions because she did "not identify what [principles] and methods she applied" to reach her conclusions.[29]

Additionally, the Court should exclude Dr. Resnick's opinions because they are impermissible legal conclusions and testimony on legal matters[30] and are "[o]pinions that merely tell the jury what result to reach are not admissible."[31] Whether the defendants acted reasonably when recommending to close the CHIPS case, in investigating certain matters surrounding Thaler, and in allegedly not including "important information" in certain court reports is an ultimate determination that the jury will need to make. The jury will also need to decide whether Thaler would have murdered EKAH if the defendants had not recommended to close the CHIPS case. Even if Dr. Resnick had sufficient education, training, and experience in child protection social work to provide these opinions, the Court must exclude them because the law does not permit him to give these opinions.

---

[29] *Olson*, 2023 WL 4353820, *24.

[30] *Southern Pine Helicopters*, 320 F.3d 838, 841.

[31] *Lee*, 616 F.3d 803, 808-09.

## II. THE COURT SHOULD EXCLUDE DR. TEPP'S OPINIONS BECAUSE HE IS NOT QUALIFIED TO GIVE THEM OR THE LAW DOES NOT ALLOW HIM TO GIVE SUCH OPINIONS

Dr. Tepp is a forensic psychologist and is no doubt qualified to give opinions related to forensic psychology. But the opinions he plans to give in this case are not related to forensic psychology. Instead, they relate to child protection social work. For example, his opinions regarding the reasonableness of Dehner's and Streefland's actions or alleged inactions in connection with the CHIPS case and what they should or should not have done have nothing to do with forensic psychology but instead everything to do with the standard of care to which a reasonable child protection social worker must adhere.

There is no evidence that Dr. Tepp is qualified to provide an opinion on the standard of care to which child protection social workers must adhere or whether Dehner and Streefland violated it. Plaintiff's expert disclosure, Dr. Tepp's report, and Dr. Tepp's curriculum vitae do not evidence any discernable education, training, or experience in child protection social work, let alone enough to qualify Dr. Tepp as an expert witness in the area. Thus, there is no evidence that Dr. Tepp is qualified to give his opinions on the standard of care for child protection social workers and the Court should exclude them.

Even if Dr. Tepp did have the expertise to give the opinions the defendants are challenging, the Court should still exclude his opinions because

his expert report did not identify the principles or methods he used to reach his conclusions. Put another way, Dr. Tepp did not identify how he used his alleged expertise to reach his conclusions.[32]

Additionally, the Court should exclude the following opinions because they are impermissible legal conclusions and testimony on legal matters[33] or are "[o]pinions that merely tell the jury what result to reach:"[34]

- It is my opinion, based upon a reasonable degree of psychological certainty, that Beth Dehner and Jennifer Streefland were unreasonable in the social work decision making.

- Dehner and Streefland were employees of Dakota County and were acting within the scope of their employment and were responsible for protecting and advocating for [EKAH].

- Dehner and Streefland did not appreciate the seriousness of Julissa Thaler's mental health and her potential harmful nature. They should have. There was obvious red flags which they failed to recognize, investigate and inform the Court.

- Given Thaler's actions and obvious psychological and mental health struggles, recommending that the case be closed and custody returned to Thaler was unreasonable.

- [Dehner and Streefland] failed to prevent [EKAH's] horrific maltreatment and his eventual death.

- [Dehner and Streefland] permitted Julissa Thaler to commit maltreatment and egregious harm upon [EKAH].

---

[32] *Olson*, 2023 WL 4353820, *24.

[33] *Lee*, 616 F.3d 803, 808-09.

[34] *Southern Pine Helicopters, Inc*, 320 F.3d 838, 841.

- Dehner and Streefland failed to exercise due care to protect [EKAH] and failed to establish or otherwise follow a Safety and Permanency Plan for Thaler to protect [EKAH].

- Dehner and Streefland repeatedly permitted Thaler to violate her Safety and Permanency Plan and acted unreasonable in permitting [EKAH] to be reunified with Thaler.

- Dehner and Streefland failed to create a reasonable safety plan for [EKAH], filed to end unsupervised visits, failed to end the trial home visits, failed when recommending case closure and failed to protect [EKAH] from Thaler by terminating parental rights and or transfer custody.

- It is my opinion that these facts, in light of what was known and what ought to have been known to Dehner and Streefland about Thaler and her relationships with her son, constituted a situation where [EKAH] was in jeopardy of neglect and harm without proper care and intervention. Dehner and Streefland knew or should have known that [EKAH] would not be safe in Thaler's care but instead endorsed giving her sole custody over [EKAH], which is a total failure to exercise due care.

- Dehner and Streefland had an obligation to protect and advocate for [EKAH's} safety. They failed in that duty and [EKAH] suffered as a direct result.

- Further, as a result of Dehner's and Streefland's unreasonable decision to recommend case termination and returning custody to Thaler, the emotional and physical abuse continued and escalated, resulting in the tragic, premature, and wrongful death of [EKAH] by Julissa Thaler.

Finally, the Court should exclude the following opinions because they are "within the knowledge or experience of lay people" and are nothing more than Dr. Tepp's inferences or conclusions within the jury's competence:[35]

- Streefland and Dehner did not appreciate the seriousness of Julissa Thaler's mental health history.

- Dehner and Streefland failed to report Julissa Thaler's ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

- Dehner failed to ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

## **CONCLUSION**

While no doubt highly qualified in certain subject matters, neither Dr. Resnick nor Dr. Tepp are qualified to give the opinions that the defendants seek to exclude here. Additionally, some or all of Drs. Resnick's and Tepp's opinions are on matters of law exclusive for the Court to determine or are decisions that the jury will need to reach or are already within their purview. As a result, the Court should exclude these opinions and prohibit Drs. Resnick and Tepp from testifying regarding these subjects at trial.

---

[35] *Pelster*, 987 F.2d 514, 526; *Nichols*, 154 F.3d 875, 883; *see also Williams*, 908 F.2d 345, 348-49 (expert's opinion properly excluded where jury was "apprised of all the relevant facts" and "equally able to draw the asserted conclusion").

Dated: January 2, 2024  **KATHRYN M. KEENA**
**DAKOTA COUNTY ATTORNEY**

By: /s/William M. Topka
    William M. Topka (#0339003)
Assistant County Attorney
1560 Highway 55
Hastings, Minnesota 55033
(651) 438-4438
william.topka@co.dakota.mn.us

*Attorneys for County of Dakota, Beth Dehner, and Jennifer Streefland*